*972
 
 BOWNES, Circuit Judge.
 

 This case arises from a conflict between the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362(a), and the attempt of the Town of Lincoln, Rhode Island, to enforce its zoning ordinance. The issue is whether the stay exemptions of § 326(b)(4) and (5) prevent the application of the automatic stay.
 

 The procedural history of the case is as follows. Plaintiff-appellant Arthur Cour-noyer filed a Chapter 11 petition in the Rhode Island Bankruptcy Court on June 25, 1982. The Town, on August 24, 1984, pursuant to valid state court orders, commenced to clear Cournoyer’s land of used truck parts by removing them and selling them. Cournoyer, on the same day, brought suit in the bankruptcy court. Invoking the automatic stay requirement of § 362(a), he sought a preliminary injunction preventing the Town from removing and selling the truck parts. The bankruptcy court issued a temporary restraining order against the Town on August 24 and heard the preliminary injunction application on August 28. On October 12,1984, the bankruptcy court, 43 B.R. 354, dismissed the petition for a preliminary injunction holding that the automatic stay provisions of § 362(a) did not apply to the Town; it also,
 
 sua sponte,
 
 appointed a trustee to sell the used truck parts, which make up most of the debtor’s inventory. Cournoyer appealed to the district court.
 

 The district court, 53 B.R. 478, affirmed that part of the bankruptcy court’s decision holding that the Town was exempt from the automatic stay. It reversed the bankruptcy court’s order appointing a trustee for the purpose of selling the debtor’s inventory.
 
 [1]
 
 Instead, it allowed the Town to remove and dispose of Coumoyer’s inventory “in a manner reasonably calculated to bring a fair market value.” The district court retained jurisdiction of the case “in order to ensure the expeditious disposition of this matter.” Cournoyer was given the right to petition the district court if he had any questions as to the method used by the Town in disposing of the inventory. The district court, in effect, allowed the Town to enforce its zoning ordinance against Cournoyer by removing Cournoyer’s inventory of used truck parts from his land and selling it. Cournoyer has appealed the district court decision.
 

 1. THE FACTUAL BACKGROUND
 

 Arthur Cournoyer and. his father own or exercise control and dominion over about thirty-three acres of land on Cobble Hill Road in Lincoln, Rhode Island. The major part of the property was acquired by the father in 1946 and it was added to over time. Sometime between 1947 and 1952, the date is disputed, Cournoyer started a truck salvage business on the property. In 1948, the Town passed a zoning ordinance which restricted the area in which Cournoyer’s property was located to residential and farming use. This ordinance was repealed in 1962 and a more restrictive one passed for the same area limiting the use of land to single family residences with lots of not less than 20,000 square feet.
 

 In 1957, the Town sought an injunction prohibiting the Cournoyers (father and son) from operating their truck salvage business on the property. In 1958, the Town and the Cournoyers entered into a consent decree by which they agreed not to store derelict trucks, truck parts, and junk on their property. On May 1, 1958, the Town brought a petition in the Rhode Island Superior Court seeking a contempt citation against the Cournoyers for their continued nonconforming use of the property. In 1960, the Rhode Island Supreme Court upheld a decision of the Town’s Zoning Board denying the Cournoyers a variance from the zoning ordinance to use part of their land as a junkyard.
 
 [2]
 

 
 *973
 
 In 1972, the Town removed a considerable quantity of junk from the property and stored it behind its Department of Public Works garage. The removal operation was stopped, however, by the Town building inspector because storing the junk behind the Town garage also violated the zoning ordinance. In June of 1974, the Rhode Island Superior Court issued an order appointing a special master to oversee clearing the land of the used truck parts and imposing a judicial lien on the Cournoyer real estate to secure the costs of the parts removal. A second judicial lien was imposed on the Cournoyer land in July of 1980 to cover the payment of costs and the master’s fee.
 

 In November 1981, the Cournoyers again sought a variance from the Zoning Board. This time they proposed restricting their salvage business to the interior of the property and maintaining the outer area as a buffer zone between their business and the neighbors. When the variance was denied, the Cournoyers appealed the Zoning Board’s decision to the Superior Court on January 5, 1982, and also sought a declaratory judgment that the Town’s zoning ordinance was invalid and void.
 

 As noted at the outset, Arthur Cournoyer filed a Chapter 11 petition on June 25, 1982. He claimed that he was forced to do this because a former attorney of his obtained a judgment against him for an unpaid debt and started to foreclose on other property he and his father owned. On July 1,1982, the Town moved that the bankruptcy court abstain from jurisdiction under § 305 of the Bankruptcy Code, 11 U.S.C. § 305. As far as we can determine from the record, the court never acted on this motion, nor did the Town pursue it.
 

 In November 1982, the Town brought contempt charges in state court against the Cournoyers because they continued to operate the salvage business on the property. On November 18, 1982, the Superior Court ordered the Town to arrange for clearing the Cournoyers’ land unless they did it themselves. On March 30, 1983, the Town again asked that the Cournoyers be found in contempt of court. On April 8,1983, the Superior Court ordered the Town to clear the land at the expense of the Cournoyers. The Cournoyers appealed and applied for a stay of the order pending appeal. The appeal is still pending, but application for the stay has been denied by both the Superior and Supreme Courts of Rhode Island. The next step in this interminable battle between the Cournoyers and the Town of Lincoln was the law suit filed on August 24, 1984, leading to this appeal.
 

 II. THE BANKRUPTCY LAW
 

 A.
 
 Debtor’s Estate
 

 The record before us does not contain the list of creditors and schedule of assets and liabilities filed by the debtor, Arthur Cour-noyer, pursuant to 11 U.S.C. § 521(1).
 
 [3]
 
 Our statement of the debtor’s assets and liabilities is derived from the bankruptcy court’s opinion, motions, responses to motions and memoranda in the record. The bankruptcy court’s opinion puts the value of the used truck parts (inventory) at $130,-000. The Town and Cournoyer differ over the valuation of the inventory. Cournoyer insists that in order to obtain full value for the truck parts they must be sold as such, a process he estimates will take six months to a year. The Town contends that since the business can no longer be operated “in the ordinary course” the value of the truck parts is what they will bring immediately after being removed from the property, mostly as scrap. In a memorandum to the bankruptcy court dated October 22, 1984, the trustee noted that Coumoyer’s business records indicated very few sales over the past year; it was the trustee’s opinion that the “going” value of the business was minimal.
 

 Although there is a question as to title ownership of part of the land on which the
 
 *974
 
 salvage business is operated,
 
 [4]
 
 we assume, for purposes of this opinion, that Arthur Cournoyer and his father own the entire thirty-three acre tract. It is clear that they exercise dominion and control over it. When he filed in bankruptcy in 1981, Cour-noyer listed the value of the land at $22,-500. The Town asserts that its reevaluation appraisal in 1982 was $65,710. The bankruptcy court’s opinion values Cournoyer’s total assets at $217,000. According to the Town, they amount to $217,475.51. The debts of the bankrupt estate are considerably less than the assets. In its opinion, the bankruptcy court stated the total debts to be $18,000. In its motion for abstention on July 1, 1981, the Town listed Cournoyer’s debts from his filed schedule as $9,377.46 secured and $6,092.52 unsecured. The secured creditors are the state court appointed master, the Town, and a former attorney of Cournoyer. The unsecured creditors are Cournoyer’s present attorney, another former attorney, and a Mr. Powell whose claim dates back to 1976. At oral argument, counsel for the Town suggested that Powell’s claim is barred by the statute of limitations.
 

 B.
 
 Jurisdiction
 

 Cournoyer argues that the bankruptcy court’s exclusive jurisdiction over the property of the estate deprived the state courts of subject matter jurisdiction. It must first be noted, although it does not affect our analysis, that under the new Code it is the district court, not the bankruptcy court which has exclusive jurisdiction of all of the property of the debtor wherever located. 28 U.S.C. § 1334(d). The shift of jurisdiction from the bankruptcy court to the district court was prompted by
 
 Northern Pipeline Construction Co. v. Marathon Pipeline Co.,
 
 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Under 28 U.S.C. § 157, title 11 (bankruptcy) cases are referred by the district court to the bankruptcy court of the district. Vesting exclusive jurisdiction of the bankrupt’s property in the district court does not bar state court proceedings. At the most, there may be a stay of such proceedings.
 

 C.
 
 The Automatic Stay
 

 As the ever proliferating case law interpreting this section of the Code illustrates, the stay provisions of 11 U.S.C. § 362(a) do not always operate automatically. Under 11 U.S.C. § 362(a), the filing of a bankruptcy petition imposes a stay on eight proceedings against the debtor or his estate. Three of the stay provisions are relevant here:
 

 (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
 

 (2) the enforcement, against the debt- or or against property of the estate, of a judgment obtained before the commencement of the case under this title;
 

 (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]
 

 Section 362(b) specifies eleven exemptions from the stay provisions of (a) for particular entities and actions. Subsections (4) and (5) are relevant to this case. The filing of a bankruptcy petition does not operate as a stay,
 

 (4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit’s police or regulatory power;
 

 (5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a govern
 
 *975
 
 mental unit to enforce such governmental unit’s police or regulatory power[.]
 

 The language of subsection (4) clearly covers this situation. The Town is a governmental unit. Its attempt on August 24, 1984, to clear Cournoyer’s property of the used truck parts was the continuation of a proceeding to enforce the Town’s regulatory power,
 
 i.e.,
 
 its zoning ordinance, that had started in 1957. The words of subsection (5) also apply to the facts and parties of this case. There is no question but that the Town is proceeding pursuant to valid state court judgments, which are not money judgments.
 

 Unless there is case law holding or suggesting otherwise, it would appear that under § 362(b)(4) and (5), the Town is exempt from the stay provisions of § 362(a). We turn, therefore, to the case law.
 

 There are two Supreme Court decisions that, although not directly on point, bear consideration. In
 
 Midlantic National Bank v. New Jersey Department of Environmental Protection
 
 and
 
 Quanta Resources Corporation v. City of New York,
 
 — U.S. -, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986), the question was “whether § 554(a) of the Bankruptcy Code, 11 U.S.C. § 554(a), authorizes a trustee in bankruptcy to abandon property in contravention of state laws or regulations that are reasonably designed to protect the public’s health or safety.”
 
 Id.
 
 at 757 (footnote omitted). In the course of its opinion, the court stated: “Congress has repeatedly expressed its legislative determination that the trustee is not to have
 
 carte blanche
 
 to ignore nonbankruptcy law.”
 
 Id.
 
 at 760. Particularly pertinent is the Court’s discussion of the automatic stay provision of the Code.
 

 Despite the importance of § 362(a) in preserving the debtor’s estate, Congress has enacted several categories of exceptions to the stay that allow the Government to commence or continue legal proceedings. For example, § 362(b)(5) permits the Government to enforce “non-monetary” judgment against a debtor’s estate. It is clear from the legislative history that one of the purposes of this exception is to protect public health and safety:
 

 “Thus, where a governmental unit is suing a debtor to prevent or stop violation of fraud,
 
 environmental protection,
 
 consumer protection,
 
 safety, or similar police or regulatory laws,
 
 or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay.” H.R. Rep. No. 95-595,
 
 supra,
 
 at 343 (emphasis added); S.Rep. No. 95-989,
 
 supra,
 
 at 52 (emphasis added).
 

 Id.
 
 at 761.
 

 The other Supreme Court case is
 
 Ohio v. Kovacs,
 
 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985). In
 
 Kovacs,
 
 the state obtained an injunction ordering Kovacs to clear up a hazardous waste site. Kovacs subsequently filed in bankruptcy. The question was whether the obligation of Ko-vaes under the injunction was a “debt” or “liability on a claim” under the Bankruptcy Code.
 
 Id.
 
 at 707. The Court held that because Kovacs had been dispossessed from his property by a state court appointed receiver and the only thing that the State wanted was the money to defray cleanup costs, that the state cleanup order had been converted into a monetary obligation that was dischargeable in bankruptcy.
 
 Id.
 
 at 710-11. The Court’s final statement is worth quoting:
 

 Finally, we do not question that anyone in possession of the site — whether it is Kovacs or another in the event the receivership is liquidated and the trustee abandons the property, or a vendee from the receiver or the bankruptcy trustee— must comply with the environmental laws of the State of Ohio. Plainly, that person or firm may not maintain a nuisance, pollute the waters of the State, or refuse to remove the source of such conditions. As the case comes to us, however, Kovacs has been dispossessed and the State seeks to enforce his cleanup obligation by a money judgment.
 

 Id.
 
 at 711.
 

 In this case, Cournoyer has not been dispossessed from his property. There is
 
 *976
 
 no money judgment involved. The Town is not seeking money from Cournoyer to clean up the site; it seeks to do what Cournoyer has adamantly refused to do, remove the used truck parts from the land. And, as the district court pointed out, Cour-noyer’s estate will receive the proceeds of the sale of the inventory, less costs of removal and sale. Both the debtor and the creditors will be protected insofar as possible under the circumstances. This case is, therefore, unlike
 
 Ohio v. Kovacs,
 
 and that decision poses no bar to treating the Town’s action here as the exercise of a regulatory power that is exempted under § 362(b)(4) and (5) from the automatic stay provisions of § 362(a).
 

 In fact, the circumstances here are similar to those of a Third Circuit case commented on by the Supreme Court in
 
 Kovacs.
 
 In
 
 Penn Terra Limited v. Department of Environmental Resources, Commonwealth of Pennsylvania,
 
 733 F.2d 267 (3d Cir.1984), the court considered a conflict between the automatic stay provision of § 362(a) and an ongoing attempt by the state to enforce its environmental laws. The court held that the automatic stay provision of the Code “should, whenever possible, be read in favor of the States.”
 
 Id.
 
 at 273. It found that the action of the state environmental agency fell squarely within Pennsylvania’s police and regulatory powers.
 
 Id.
 
 at 274. The court rejected the argument that a state effort to force a debtor to clean up his waste was, in essence, a money judgment. It focused on the nature of the remedy sought, pointing out that the State did not seek money or damages but rather an injunction to restore the environment and prevent future harm to it. The court concluded that since the state action was an equitable action to prevent future harm and not a money judgment, the automatic stay provision of § 362(a) was not applicable.
 
 Id.
 
 at 277-79. The Supreme Court’s comment on
 
 Penn Terra
 
 is important:
 

 11. The State relies on
 
 Penn Terra, Ltd. v. Department of Environmental Resources,
 
 733 F.2d 267 (CA3 1984). There, the Court of Appeals for the Third Circuit held that the automatic stay provision of 11 U.S.C. § 362 did not apply to the State’s seeking an injunction against a bankrupt to require compliance with the environmental laws. This was held to be an effort to enforce the police power statutes of the State, not a suit to enforce a money judgment. But in that case, there had been no appointment of a receiver who had the duty to comply with the state law and who was seeking money from the bankrupt.
 
 The automatic stay provision does not apply to suits to enforce the regulatory statutes of the State,
 
 but the enforcement of such a judgment by seeking money from the bankrupt — what the Court of Appeals for the Sixth Circuit concluded was involved in this case — is another matter.
 

 Ohio v. Kovacs,
 
 105 S.Ct. at 711 n. 11 (emphasis added).
 

 Moreover, a finding that the zoning power is a “police or regulatory power” under §§ 362(b)(4) and (5) is consistent with other case law on the nature of governmental action that falls within those sections. For example, the Second Circuit simply assumed that zoning enforcement is such a power. In
 
 Matter of National Hospital and Institutional Builders,
 
 658 F.2d 39, 44 (2d Cir.1981),
 
 cert. denied,
 
 454 U.S. 1149, 102 S.Ct. 1014, 71 L.Ed.2d 303 (1982), the court remanded for a determination of whether there was bad faith enforcement of the zoning law by the City. If there was, then the City’s motion for relief from the application of the automatic stay was to be denied.
 

 An oft cited case is
 
 State of Missouri v. United States Bankruptcy Court for the E.D. of Arkansas,
 
 647 F.2d 768 (8th Cir.1981), ce
 
 rt. denied,
 
 454 U.S. 1162, 102 S.Ct. 1035, 71 L.Ed.2d 318 (1982). The question was whether the automatic stay prevailed over a Missouri law empowering the State to operate and liquidate insolvent grain warehouses. The court found that the state’s grain laws, “although regulatory in nature, primarily relate to the protection of the pecuniary interest in the debtor’s property and not to matters of public safety
 
 *977
 
 and health,” and thus did not fall within the § 362(b)(4) exemption of the automatic stay.
 
 Id.
 
 at 776. This strongly suggests that regulatory action, not pecuniary in nature, concerning public safety and health would be exempt from the automatic stay.
 

 In a case predating the new Bankruptcy Code, the District Court of Massachusetts held that the bankruptcy court lacked authority to grant a preliminary injunction enjoining the city licensing board from enforcing the suspension of liquor licenses held by the debtors.
 
 Colonial Tavern, Inc. v. Byrne,
 
 420 F.Supp. 44 (D.Mass.1976): The court noted that it had long been accepted law that “the powers of a Bankruptcy Court do not extend to interference in the comprehensive regulatory laws of a state.”
 
 Id.
 
 at 45.
 

 In
 
 Beker Industries Corp. v. Florida Land and Water Adjudicatory Commission,
 
 57 B.R. 611 (Bkrtcy S.D.N.Y.1986), the court held that administrative proceedings before the Commission were exempted by § 362(b)(4). The court stated,
 
 inter alia,
 
 that a debtor in possession under Chapter 11 is not excused because of its bankruptcy from valid and enforceable state and local regulations.
 
 In Re Porter,
 
 42 B.R. 61 (Bkrtcy.1984), concerned state public nuisance proceedings against a house of prostitution. In applying the § 362(b)(4) exemption, the court pointed out that the debtor’s property was used in violation of state law, that a governmental unit had pursued legal action to remedy the violation, that the debtor was being deprived of property of the estate to ensure compliance with public policy, but that the debtor was not being deprived of title to the real estate or prevented from exercising dominion and control over it.
 
 Id.
 
 at 66. In
 
 Matter of Kennise Diversified Corp.,
 
 34 B.R. 237 (Bkrtcy.1983), the court applied the § 362(b)(5) exemption to allow the City to enforce its housing laws. In the course of its opinion, the court stated: “The provisions of the Bankruptcy Code do not and are not intended to provide an automatic mechanism for relieving property owners of the unpleasant effects of valid local laws embodying police and regulatory provisions.”
 
 Id.
 
 at 245.
 
 In Re Cousins Restaurants, Inc.,
 
 11 B.R. 521 (Bkrtcy.1981), involved the operation of a discotheque without a valid permit. In allowing the Town’s action to proceed under § 362(b)(4), the court noted that the debtor had the right to challenge the Town’s action in the state courts.
 
 But see In Re Island Club Marina, Ltd.,
 
 38 B.R. 847 (Bkrtcy.1984), where the court held that a zoning change requiring cancellation of debtor’s building permits was invalid, that equitable estoppel required a finding that debtor’s building permit was valid, and that because a building permit was not required for health and safety, the exemption provision of § 362(b)(4) did not apply.
 

 Finally, although not directly implicated, the provisions of 28 U.S.C. § 959(b) bear on the issue before us. It provides:
 

 (b) Except as provided in section 1166 of title 11, a trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.
 

 This, along with the exemptions of § 362(b)(4) and (5), indicate strongly that the automatic stay should not be used as a shield against the application and enforcement of valid state and local laws.
 

 We hold that, under the wording of the statute, its intent and policy, and the pertinent case law, the provisions of 11 U.S.C. § 362(b)(4) and (5) exempt the Town’s enforcement of its zoning ordinance from the automatic stay provision of 11 U.S.C. § 362(a). We hold further that because the district court has exclusive jurisdiction of the debtor’s property under 28 U.S.C. § 1334(d), it has the power to supervise and oversee the removal and sale of the debtor’s inventory of used truck parts.
 

 Affirmed.
 

 [1]
 

 . This ruling is not challenged. In a Chapter 11 case, a trustee can only be appointed upon the request of a party in interest or the United States Trustee. 11 U.S.C. § 1104(a); § 151104(a).
 

 [2]
 

 . The Rhode Island Supreme Court granted cer-tiorari directly from the Zoning Board decision.
 
 Cournoyer
 
 v.
 
 Zoning Board of Review of Town of Lincoln,
 
 92 R.I. 42, 166 A.2d 128 (1960).
 

 [3]
 

 . 11 U.S.C. § 521(1) states: "The debtor shall— (1) file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabil¡ties, a schedule of current income and current expenditures, and a statement of the debtor’s financial affairs[.]”
 

 [4]
 

 . Some of the land was acquired at tax sales, and there appears to be a title dispute between the Cournoyers and a prior owner of one parcel.