# United States Court of Appeals

## For the First Circuit

No. 03-1315

IN RE: SPOOKYWORLD, INC.,

Debtor.

_____

SPOOKYWORLD, INC.,

Plaintiff, Appellant,

v.

TOWN OF BERLIN, ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, <u>U.S. District Judge</u>]

Before

Boudin, <u>Chief Judge</u>,
Baldock,<sup>*</sup> <u>Senior Circuit Judge</u>,
and Howard, <u>Circuit Judge</u>.

<u>Stephen Gordon</u> with whom <u>Stephen Gordon & Associates</u> was on brief for appellant.
<u>Peter J. Camp</u> with whom <u>Adam J. Brand</u> and <u>Brand & Associates</u> were on brief for appellees.

September 25, 2003

_____

<sup>*</sup>Of the Tenth Circuit, sitting by designation.

**BOUDIN**, <u>**Chief Judge**</u>.  This appeal concerns efforts by the Town of Berlin to bring certain attractions owned by appellant Spookyworld, Inc. ("Spookyworld"), into compliance with the Massachusetts Building Code.  780 C.M.R (passim) (6th ed. 1997). Spookyworld was created in 1991 by sole shareholders David and Linda Bertolino.  The corporation built a horror theme park in Berlin, Massachusetts, on land leased from a trust controlled by the Bertolinos.  The park celebrated Halloween, opening every year only for the month of October.

From modest beginnings, Spookyworld's business grew quickly: in 1997, it grossed $1,880,000, and by 1998, it was employing approximately 500 people during its annual month of operation.  In 1998 the park contained three buildings housing a total of five attractions: a barn, which included a haunted house and a "celebrity area" on the main floor and a haunted "mine shaft" in the basement; a "museum display"; and a metal building containing a 3-D wax museum.

On September 30, 1998, the building inspector for the Town of Berlin, Lawrence Brandt, issued three certificates of inspection to Spookyworld, one for each building.  Shortly thereafter, on October 7, Brandt sent a letter to David Bertolino rescinding the certificate covering the haunted house and the haunted mine shaft.  According to Brandt, recent amendments to the Massachusetts Building Code required that these two attractions

-2-

have sprinkler systems installed.  780 C.M.R. § 413.4 (6th ed. 1997).[1]

Because of Brandt's actions, Spookyworld faced the prospect of having to close two of its principal draws for the duration of the critical month of October.  Spookyworld therefore immediately appealed Brandt's decision to the building code appeals board under Mass. Gen. Laws, ch. 143, § 100 (West 2002).  Under that provision, Spookyworld's appeal had the effect of staying all enforcement proceedings against it, unless state or local officials could present evidence that the stay would "involve imminent peril of life or property."  Id.; see also 780 C.M.R. § 122.3.3 (6th ed. 1997).

Spookyworld then began negotiations with town officials, attempting to work out an interim solution whereby the haunted house and the haunted mine shaft could continue to operate through October without shutting down for sprinkler installation.  Duncan Baum, the town's assistant fire chief, and Gene Novak, a regional building inspector, participated in the negotiations.  Among the options discussed was a "fire watch," which would have involved

---

[1]Defendants say in their brief that there were multiple problems with all three buildings and that Brandt withdrew the certificates for all of them.  Nevertheless, the principal dispute between the parties relates to the haunted house and haunted mine shaft and to the question whether these two attractions required sprinkler systems.

Spookyworld's paying the town to station fire personnel at the park during its hours of operation.

The negotiations ultimately broke down, and on October 16, 1998, the town filed a complaint against Spookyworld in Worcester Superior Court. The complaint sought a temporary restraining order, shutting down the haunted house and the haunted mine shaft until such time as sprinkler systems could be installed in each; the complaint also sought a fine for each day of non-compliance. The court issued the temporary restraining order later that day.

One hour after the order issued, Spookyworld filed a chapter 11 petition under the Bankruptcy Code and sought to continue operating both attractions by virtue of the automatic stay provided by the statute. 11 U.S.C. § 362(a) (2000). The very next day, however, Spookyworld was forced to shut down the attractions when town officials came to the park and threatened to arrest Spookyworld employees for non-compliance with the court order.

In response, Spookyworld filed an adversary complaint in bankruptcy court, seeking a preliminary injunction to halt the state court proceedings and prevent any action on the part of the town to close park facilities. At an emergency hearing held before the bankruptcy court on October 20, 1998, counsel for the town claimed that continued operation of the two facilities in question posed an immediate danger to the safety of the park's customers.

The town's counsel also represented that the town's actions enjoyed the support of the highest public safety officials of the state. The bankruptcy court refused to grant Spookyworld's requested injunction, citing the police power exception to the automatic stay. 11 U.S.C. § 362(b)(4) (2000).

Shortly thereafter the Worcester Superior Court held a hearing on the continuation of the town's temporary restraining order. Counsel for the town made representations at this hearing similar to the ones he had made before the bankruptcy court. After the hearing, the court converted the temporary restraining order into a preliminary injunction. The haunted house and the haunted mine shaft remained closed for the rest of October 1998.

On February 9, 1999, Spookyworld filed an amended adversary complaint in bankruptcy court. The amended complaint alleged that the Town of Berlin and various of its officials had willfully violated the automatic stay. The amended complaint also contained a section 1983 claim, 42 U.S.C. § 1983 (2000), a section 1985 claim, id. § 1985, and several state law claims including libel, slander, interference with contractual relationships, and violations of Mass. Gen. Laws, ch. 12, § 11H-I (West 2002). In due course, defendants moved for summary judgment on all claims.

On August 2, 2001, the bankruptcy court ruled that Spookyworld's automatic stay claim was a core bankruptcy claim and that all of Spookyworld's other claims were non-core claims. In re

-5-

Spookyworld, 266 B.R. 1, 6-11 (Bankr. D. Mass. 2001). The bankruptcy court granted defendants' motion for summary judgment with respect to the automatic stay claim, 28 U.S.C. § 157(b)(1) (2000); and, as to the rest of Spookyworld's claims, framed proposed findings of fact and conclusions of law recommending the grant of summary judgment in favor of defendants. 28 U.S.C. § 157(c)(1) (2000); Spookyworld, 266 B.R. at 11-20.

Spookyworld filed a timely appeal to the district court challenging the bankruptcy court's grant of summary judgment on the core automatic stay claim. Possibly the notice could be read also to embrace a challenge to the bankruptcy court's proposed findings of fact and conclusions of law with regard to the non-core claims. If the latter was intended, use of an appeal was a procedural misstep; the proposed findings and conclusions were not a judgment subject to "appeal" but recommendations to the district court. The correct, and required, course was to file "specific objections" to those recommendations that were disputed by Spookyworld. 28 U.S.C. § 157(c)(1) (2000); Fed. R. Bank. P. 9033.

On December 19, 2001, no specific objections to the recommendations having been filed within the time provided, the district court adopted the bankruptcy court's proposed findings of fact and conclusions of law; accordingly, the district court, by order dated the same day, granted judgment to the defendants on the non-core claims. Whether Spookyworld was immediately aware of the

December 19 actions is unclear, but at no point did it seek to reopen this judgment based on lack of notice.

The appeal as to the core claims was more protracted. Over a year later and after briefing by both sides the district court on January 23, 2003, issued a memorandum and order affirming (on grounds described below) the bankruptcy court's grant of summary judgment to defendants on Spookyworld's core automatic stay claim. The district court then dismissed Spookyworld's appeal on January 24, 2003. Spookyworld's district court brief also attacked the recommendations on the non-core claims but the district court noted that those had already been disposed of by the December 19, 2001, judgment. Spookyworld filed a notice of appeal to this court on February 21, 2003.

In this court, Spookyworld contests both the district court order of December 19, 2001, entering judgment for the defendants on the non-core claims (the "non-core order") and the memorandum and order of January 23, 2003, affirming the bankruptcy court's disposition of the core automatic stay claim (the "core order"). At the threshold, defendants say that Spookyworld's notice of appeal does not encompass the non-core order, and that therefore we lack power to consider it on the merits. Fed. R. App. P. 3(c); Smith v. Barry, 502 U.S. 244, 248 (1992) ("Rule 3's dictates are jurisdictional in nature . . . .").

Fed. R. App. P. 3(c)(1)(B) states: "The notice of appeal must designate the judgment, order, or part thereof being appealed." The requirements of Rule 3 are liberally construed, Barry, 502 U.S. at 248, and "[a] mistake in designating a judgment . . . in the notice of appeal ordinarily will not result in loss of the appeal as long as the intent to appeal a specific judgment can be fairly inferred from the notice and appellee is not misled by the mistake." Kelly v. United States, 789 F.2d 94, 96 n.3 (1st Cir. 1986). But Rule 3 must still be satisfied, and "noncompliance is fatal to an appeal." Barry, 502 U.S. at 248; Torres v. Oakland Scavenger Co., 487 U.S. 312, 317 n.3 (1988).

Spookyworld's notice of appeal to this court says in its entirety:

> [Now comes] the Appellant Spookyworld, Inc. and appeals the Order of Dismissal of the District Court dated 1/23/03 affirming the decision of the Bankruptcy Court which allowed the Motion of Defendants, Town of Berlin, et al for Summary Judgment.

This language refers only to the order resolving the core claim,[2] and this is not sufficient to inform either defendants or the court of Spookyworld's intent to appeal the non-core order. Barry, 502 U.S. at 248. Accordingly, we do not reach the questions whether

---

[2]The district court's own core order does mention the non-core order but only to say it previously resolved the non-core claims; a "passing allusion" to a previous order in the order designated by the notice of appeal is not enough to incorporate the previous order into the notice. See Kotler v. Am. Tobacco Co., 981 F.2d 7, 12 (1st Cir. 1992).

-8-

defendants were prejudiced or whether an appeal from the non-core order issued over a year before the notice of appeal was filed would have been timely. Fed. R. App. P. 6(a); Fed. R. App. P. 4(a)(1)(A).

Occasionally, an opening brief has been treated as a notice of appeal, and Spookyworld's brief in this court does contest the disposition of the non-core order. But Spookyworld's opening brief was not filed until May 20, 2003, which is well after the 30 days for filing a notice of appeal, Fed. R. App. P. 4(a)(1)(A), from the core order (issued on January 23, 2003), and over a year after the non-core order (issued on December 19, 2001). Barry, 502 U.S. at 249 (appellate court may treat a filing "styled as a brief as a notice of appeal," but only "if the filing is timely under Rule 4 and conveys the information required by Rule 3(c)").

This brings us to the bankruptcy court's grant of summary judgment to defendants on Spookyworld's core automatic stay claim which we review de novo, In re Varrasso, 37 F.3d 760, 762-63 (1st Cir. 1994), construing the record in the light most favorable to Spookyworld as the non-moving party. Triangle Trading Co. v. Robroy Indus., 200 F.3d 1, 2 (1st Cir. 1999); Varrasso, 37 F.3d at 763. We must affirm if "no genuine issue of material fact exists, and [defendants have] successfully demonstrated an entitlement to

judgment as a matter of law."  Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056; <u>Varrasso</u>, 37 F.3d at 763.

Spookyworld argues that defendants' actions, including the continued prosecution of the state court case after Spookyworld filed its chapter 11 proceeding, constitute a willful violation of the automatic stay, entitling it to damages under section 362(h). The bankruptcy court ruled that these actions rested on the town's police or regulatory power and so were exempt from the automatic stay under section 362(b)(4). <u>Spookyworld</u>, 266 B.R. at 17-20.  The district court affirmed but on a different ground:  it held that corporations cannot take advantage of section 362(h)'s right of action because the provision only authorizes suits brought by "individual[s]."

In our view both courts were right.  We conclude that Spookyworld, because it is a corporation, cannot bring suit under section 362(h), and that even if it could, defendants' actions are within the police power exception to the automatic stay.  We also reject Spookyworld's alternative argument that the bankruptcy court should have sanctioned defendants according to its contempt powers under 11 U.S.C. § 105(a) (2000).  These three issues are considered in turn.

Section 362(a) of the Bankruptcy Code, imposing the automatic stay, applies generally to proceedings against "the debtor."  By contrast, section 362(h) says:  "An individual injured

-10-

by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." Defendants argue that the term "individual" means that corporations are not authorized to collect damages under section 362.

There is currently a circuit split. Two circuits hold that the term "individual" includes corporations, and four circuits hold that it does not.[3] Every district court in this circuit to consider the issue has endorsed the majority view, as has the circuit's Bankruptcy Appellate Panel.[4] Analysis starts, as usual, with the statutory language, United States v. Ron Pair Enters., 489 U.S. 235, 241-42 (1989), although bare words would not license a result "demonstrably at odds" with legislative intent. Id. at 242 (quoting Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571 (1982)).

The Bankruptcy Code does not define "individual," but several provisions indicate that the term was not meant to include

---

[3]Compare In re Atlantic Bus. and Cmty. Corp., 901 F.2d 325, 328-29 (3d Cir. 1990), and Budget Serv. Co. v. Better Homes of Va., Inc., 804 F.2d 289, 292 (4th Cir. 1986), with In re Just Brakes Corp. Sys., 108 F.3d 881, 884-85 (8th Cir. 1997), In re Jove Eng'g, Inc. 92 F.3d 1539, 1549-53 (11th Cir. 1996), Goodman v. Knight, 991 F.2d 613, 618-20 (9th Cir. 1993), and In re Chateaugay Corp., 920 F.2d 183, 184-87 (2d Cir. 1990).

[4]See In re American Chem. Works Co., 235 B.R. 216, 220-21 (D.R.I. 1999); In re A & J Auto Sales, Inc., 223 B.R. 839, 844-45 (D.N.H. 1998); In re Shape, Inc., 135 B.R. 707, 708 (D. Me. 1992); In re Turabo Motors Co., BAP No. PR 01-035, 2002 Bankr. Lexis 1278, *32-*34 (B.A.P. 1st Cir. Oct. 21, 2002).

corporations. For example, the code defines "person" to include "individual[s], partnership[s], and corporation[s]." 11 U.S.C. § 101(41) (2000) (emphasis added). In addition, "corporation" is defined to include an "association having a power or privilege that a private corporation, but not an individual or a partnership possesses." Id. § 101(9)(A)(i) (emphasis added). See also In re Jove Eng'g, Inc. 92 F.3d 1539, 1551 & n.11 (11th Cir. 1996) (citing additional examples); In re Chateaugay Corp., 920 F.2d 183, 185-86 (2d Cir. 1990) (same).

It may at first be surprising that Congress would want to withhold the benefits of 362(h) from corporations, but this decision is not "demonstrably at odds" with legislative intent. Section 362(h) was enacted as part of the "'Consumer Credit Amendments,' which contain[ed] numerous additions to the code relating only to 'individuals.'" Chateaugay, 920 F.2d at 186 (citing Bankruptcy Amendments and Federal Judgship Act of 1984, Pub. L. No. 98-353, Title III--Amendments to Title 11 of the United States Code, Subtitle A--Consumer Credit Amendments, § 304, 98 Stat. 333, 352 (1984)).

Corporations are not wholly without remedy for violations of the automatic stay: under 11 U.S.C. § 105(a) (2000), "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Prior to the enactment of section 362(h) in 1984, contempt orders issued

-12-

under section 105(a), including awards of damages, were routinely used to punish violations of the automatic stay. See In re Crysen/Montenay Energy Co., 902 F.2d 1098, 1104 (2d Cir. 1990); In re A & J Auto Sales, Inc., 223 B.R. 839, 844-45 (D.N.H. 1998).

After enactment of section 362(h), corporations (and other non-"individual[s]") remain free to petition bankruptcy courts to award damages for automatic stay violations pursuant to their section 105(a) power. See, e.g., Chateaugay, 920 F.2d at 186-87. A discretionary remedy is not as good as one that is assured, see Goodman v. Knight, 991 F.2d 613, 620-21 (9th Cir. 1993), but Congress could easily have thought that corporations needed less protection. As the Second Circuit explains:

> After Congress in 1978 passed the automatic stay provisions of § 362 along with the rest of the code, including § 105(a) . . ., it is entirely possible that Congress then chose to expand the remedies for violations one step at a time. Congress may well have thought that individual debtors were particularly vulnerable to violations of the stay by debt-collection agencies and others who may be tempted to believe that individuals are less likely than corporations to be aware of their rights under the automatic stay.

Chateaugay, 920 F.2d at 186.

In sum, we agree with the Second, Eighth, Ninth, and Eleventh Circuits, and with the district courts and the BAP in this circuit, and hold that corporations cannot sue under section 362(h) to obtain damages for violation of the automatic stay. Statutory language so suggests and neither legislative history nor policy

-13-

concerns point the other way.  It is well to have this issue settled in this circuit at least until the Supreme Court addresses the matter--which might take some time if other circuits follow the plurality view.

Spookyworld argues that, so construed, section 362(h) denies equal protection under the Fifth Amendment to closely held corporations, like itself, that have only a few shareholders. But when drawing distinctions that do not involve fundamental rights or suspect classes, Congress need only have a rational basis for its decisions, United States R.R. Ret. Bd. v. Fritz, 449 U.S. 166, 175-76 (1980).  There is nothing irrational in drawing economic-regulation lines between individuals and corporations, closely held or otherwise; indeed, the Internal Revenue Code is rife with such distinctions.

Even if corporations could sue, we would still affirm the bankruptcy court's grant of summary judgment on the merits. Ordinarily, bankruptcy automatically stays lawsuits in other courts against the debtor, see, e.g., ICC v. Holmes Transp., Inc., 931 F.2d 984, 987-88 (1st Cir. 1991), but this is subject to the so-called police power exception.  Section 362(b)(4) says:

> The filing of a [chapter 11] petition . . . does not operate as a stay . . . of the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police or regulatory power.

11 U.S.C. § 362(b)(4) (2000). The town is a "governmental unit" within the meaning of 362(b)(4). <u>Cournoyer</u> v. <u>Town of Lincoln</u>, 790 F.2d 971, 975 (1st Cir. 1986).

Spookyworld says that this section does not apply because the defendants' actions were undertaken in bad faith. According to Spookyworld, the defendants in securing the temporary restraining order from the Worcester Superior Court deliberately exaggerated the dangers of operating the haunted house and the haunted mine shaft without sprinklers, the severity of any alleged building code violations, and the degree to which state public safety officials supported their decision to take legal action.

Spookyworld also says that when it sought protection under chapter 11, the town similarly misled the bankruptcy court in convincing it not to enjoin the state court action. It claims that the defendants again misrepresented the situation when they convinced the Worcester Superior Court, post-petition, to convert its temporary restraining order into a preliminary injunction. It says that the record demonstrates these false statements or, at the very least, that their falsity involves factual issues barring the district court's grant of summary judgment.

For clarity's sake, Spookyworld's argument should be distinguished from a related, but here inapplicable, limitation on the use of the police power exception to the automatic stay. Under the case law, the exception does not apply if the government takes

legal action to advance its own "pecuniary" interest (or perhaps the pecuniary interest of others); but it does apply if the government acts in the interest of "public safety and welfare." E.g., In re Universal Life Church, 128 F.3d 1294, 1297-98 (9th Cir. 1997); see also Chao v. Hosp. Staffing Servs., Inc., 270 F.3d 374, 385-89 (6th Cir. 2001).

The Massachusetts Building Code is plainly aimed at protecting the public, and Spookyworld does not say otherwise. In adopting the police power exception to the automatic stay, Congress explained that "where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws . . . the action or proceeding is not stayed under the automatic stay." S. Rep. No. 95-989, at 52 (1978). Accord, Cournoyer, 790 F.2d at 975-77 (enforcement of zoning regulation within police power exception).

Admittedly, there is some authority for the proposition that government actions undertaken in bad faith are not exempt from the automatic stay. See In re Nat'l Hosp. and Institutional Builders Co., 658 F.2d 39, 43-44 (2d Cir. 1981) (under the old Bankruptcy Act which had no built-in police power exception); In re Beker Indus. Corp., 57 B.R. 611, 627 (Bankr. S.D.N.Y. 1986). However, National Hospital was arguably undermined, if not overruled, by Board of Governors v. MCorp Financial, Inc., 502 U.S.

-16-

32, 40 (1991), which held that bankruptcy courts should not inquire into the "legitimacy" of ongoing administrative enforcement proceedings in determining whether the police power exception applies to them.[5]

We are doubtful whether a bad faith exception should be read into section 362(b)(4) where the state directive being enforced is directed at ordinary public purposes. There is much force to the dissent of Judge Mansfield in National Hospital:

> [A bad faith] exception would result in Bankruptcy Court mini-trials of purely state regulatory issues whenever, as might be expected to happen frequently, the debtor sought by claiming 'bad faith' to have those issues tried in a Bankruptcy Court, which would be sympathetic toward any resolution that would improve the estate, rather than before state tribunals. The proper remedy is to seek redress in the state courts which may be expected not to tolerate bad faith conduct . . . .

National Hospital, 658 F.2d at 46. By contrast, the pecuniary purpose exception need present no such dangers. Cf. Safety-Kleen, Inc. v. Wyche, 274 F.3d 846, 865 (4th Cir. 2001) (pecuniary purpose test looks only to the objective purpose of the underlying law sought to be enforced).

---

[5]See In re Javens, 107 F.3d 359, 365-67 & n. 6 (6th Cir. 1997) (finding that National Hospital's analysis did not survive MCorp). After MCorp, the Sixth Circuit concluded that bankruptcy courts retain the power to enjoin bad faith exercises of police or regulatory power (presumably under section 105(a)), but this was not a claim that the automatic stay operated in such a case. Id. at 366-67 & n. 7.

Of course, one can imagine some fairly appealing cases for a bad faith exception; suppose that incontrovertible proof was available that the town's lawyer had brought a wholly baseless injunction action against Spookyworld motivated by personal malice. Yet such an injunction could easily be overturned by offering the same evidence to the state court; and state remedies exist for malicious prosecution. Thus, the case for a bad faith exception seems thin; but, even if such an exception existed--which we need not definitively decide--it would not extend to this case.

On summary judgment we are bound to assume that Spookyworld could prove that defendants exaggerated the seriousness of the building code violations, but this is a far cry from showing that the defendants brought the state action for ulterior motives or that they did not believe in the basic genuineness of their case. Lawyers constantly overstate their claims. In a robust adversary system, courts offer lawyers a measure of latitude.

If misstatements and exaggeration in the state court were enough to defeat the automatic stay, the bankruptcy courts would be relitigating state enforcement actions every day. The game is not worth the candle. It is well to remember that section 362(b)(4) embodies a fundamental judgment of Congress: that protecting the public welfare and safety trumps the concerns that underlie the automatic stay, a provision whose main purpose is to prevent some private creditors from gaining priority on other creditors. See,

e.g., <u>Mann</u> v. <u>Chase Manhattan Mortgage Corp.</u>, 316 F.3d 1, 3 (1st Cir. 2003).

There are penalties enough, formal as well as informal, for lawyers and other officials who make false factual statements to courts. Indeed, Spookyworld itself argues in the alternative that the bankruptcy court should have awarded it damages under section 105(a). As noted earlier, bankruptcy courts do possess the discretionary authority to award damages for automatic stay violations as part of their power to "issue any order . . . that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a) (2000); <u>Chateaugay</u>, 920 F.2d at 186-87.

This alternative claim for damages is waived because Spookyworld did not make it before the district court. <u>See</u> <u>Daigle</u> v. <u>Me. Med. Ctr., Inc.</u>, 14 F.3d 684, 687 (1st Cir. 1994). In any event, the decision whether to award such damages is discretionary. <u>Goodman</u>, 991 F.2d at 620. On this record, there is nothing that would make it an abuse of discretion to refuse to award damages under the contempt power.

<u>Affirmed.</u>