In re Thomas PATTON and
Sally Patton, Debtors.

Thomas Patton and Sally
Patton, Plaintiffs

v.

Town of Orford, Defendant

Bankruptcy No. 99–12423–MWV.
Adversary No. 04–1225–MWV.

United States Bankruptcy Court,
D. New Hampshire.

April 8, 2005.

Michael R. Kainen, White River Junction, VT, for Debtors/Plaintiffs.

Adele M. Fulton, Gardner & Fulton, Lebanon, NH, for Defendant.

## MEMORANDUM OPINION

MARK W. VAUGHN, Chief Judge.

The Court has before it the motion for summary judgment filed by the Town of Orford (hereinafter, "Town" or "Defendant") and the objection thereto and cross-motion for summary judgment filed by Thomas and Sally Patton (hereinafter, "Pattons" or "Plaintiffs"). In support of the Defendant's motion, an affidavit was filed, supported by Exhibits B through PP, which are referred to in this opinion. The issues before the Court arise out of a complaint brought by the Plaintiffs against the Defendant seeking damages for violation of the automatic stay and contempt. On March 22, 2005, this Court heard oral arguments from counsel for the Plaintiffs and counsel for the Defendant. For the reasons stated below, the Court grants the Defendant's motion for summary judgment and denies the Plaintiffs' cross-motion for summary judgment.

### JURISDICTION

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

### FACTS

This adversary proceeding is the culmination of a long-standing dispute between the Plaintiffs and the Defendant concerning the storage of vehicles and other types of property on land owned by the Plaintiffs, formerly the Orford Inn, located on Route 10 in Orford, New Hampshire. On July 8, 1998, the selectmen of the Town notified the Plaintiffs by letter that they were in violation of New Hampshire RSA 236:111 through RSA 236:129 concerning junkyards. (Def.'s Ex. C.) On August 27, 1998, the Town filed a petition for a mandatory injunction for illegal junkyard against the Pattons in the Grafton County Superior Court. (Def.'s Ex. D.) On the same day, the Pattons filed their first petition under Chapter 13 of the Bankruptcy Code with this Court. A suggestion of bankruptcy was filed in the superior court (Def.'s Ex. F) to which the Town objected (Def.'s Ex. G), citing 11 U.S.C. § 362(b)(4) of the Bankruptcy Code,[1] which excepts from the automatic stay:

The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay—

. . . .

(4) under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit or any organization exercising authority under the Convention on the Prohibition of the Development, Production, Stockpiling and Use of Chemical Weapons and on Their Destruction, opened for signature on January 13, 1993, to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other

---

1. Unless otherwise noted, all statutory section references herein are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101, *et seq.*

than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power.

11 U.S.C.A. § 362(b)(4) (West 2005). On March 22, 1999, the superior court issued its opinion, finding that the Pattons were in violation of the junkyard statute and ordering that the violation be abated within fifteen days. (Def.'s Ex. H.) The opinion also recited that the superior court action was not stayed by § 362. Although the Pattons asked for reconsideration (Def.'s Ex. I), which was denied (Def.'s Ex. J), they did not object to the finding that the automatic stay was not applicable and did not raise the issue in the bankruptcy court. On May 7, 1999, the Town filed a motion for contempt (Def.'s Ex. K), which it withdrew when the Pattons filed an application with the New Hampshire Department of Transportation for a junkyard permit. (Def.'s Ex. L.) On June 7, 1999, the Chapter 13 proceeding was dismissed by the Court with the consent of the Pattons. (Def.'s Ex. O.) On June 30, 1999, the Pattons filed their second Chapter 13 case in this Court, and this time, they were represented by counsel. Schedule B(23) listed as assets "[s]everal junked vehicles located at Orford Street in Orford NH. Value less than the cost of removal." (Def.'s Ex. P.) On August 30, 1999, the Pattons filed their Chapter 13 plan, which listed the Town as being owed real estate, but did not include any other claim against the Town as an asset. (Def.'s Ex. Q.) In September 1999, the Pattons withdrew their application for a junkyard permit. (Def.'s Ex. R.) On October 15, 1999, the Town filed a motion to bring the injunction matter forward and for a finding of contempt against the Pattons. Paragraph 18 of that motion included the following:

18. Furthermore, the Town requests that the Court allow the Town to dispose of, through auction or sale, all items removed from the property. The Town proposes to submit all proceeds from such a sale to the Court, along with an accounting of expenses incurred by the Town and the request for reimbursement of its expenses in abating the junkyard condition.

(Def.'s Ex. S.) The Pattons objected through counsel. (Def.'s Ex. T.) On January 5, 2000, the superior court found the Pattons in willful contempt of its previous orders, gave them fifteen days to remove the vehicles from the premises. The January 5, 2000, order included the following:

2. That in the event that the said defendants shall fail to comply with paragraph # 1 above, then the plaintiff, Town of Orford, shall have the right to abate the junkyard condition of defendants' property without interference by the defendants. Specifically, the said Town is authorized to dispose of, through auction or sale, all items removed from the defendants' property consistent with paragraph # 1 above. Subsequent to sale, the Town shall submit all proceeds from same to the Court with a full accounting of all vehicles and/or personalty disposed of and proceeds received for same.

3. That the Town shall, upon request, be reimbursed from the proceeds collected pursuant to paragraph # 2 above and submitted to the Court, for all reasonable expenses including attorney's fees incurred in abating the "junkyard" condition, as reviewed above.

(Def.'s Ex. U.) The Pattons moved for clarification and reconsideration (Def.'s Ex. V) and, on February 3, 2000, the Court gave the Pattons until February 7, 2000, to remove the vehicles, or the Town could do so and dispose of them through auction sale and provide an accounting to the supe-

rior court. (Def.'s Ex. X.) The Pattons did not comply with the February 7 deadline, and the Town of Orford removed the vehicles and sold them for a total amount of $7,405.

On April 4, 2000, the Town filed in the superior court, "Plaintiff's Accounting and Motion for Reimbursement of Expenses, Fees and Costs" requesting that the court authorize the extent of the proceeds of the sale, removal expenses of $1,020, and attorney fees and costs of $12,328.83. (Def.'s Ex. CC.) Attached to this motion was a breakdown of the attorney fees sought. The Pattons objected through counsel, arguing that the sale of the vehicles was not done in a commercially reasonable manner and that the legal fees were excessive. (Def.'s Ex. DD.) The Town responded, again through counsel, arguing that the sale of the vehicles was reasonably conducted and that the attorney fees were reasonable.[2] The superior court, in its May 5, 2000, order, accepted the Town's accounting and authorized the reimbursement of the cost of removal and attorney fees from the proceeds. (Def.'s Ex. EE.) The Pattons appealed to the New Hampshire Supreme Court (Def.'s Ex. FF), which refused to hear the appeal (Def.'s Ex. GG), and the proceeds were paid to the Town on June 8, 2001. (Def.'s Ex. HH.)

On March 7, 2001, the Pattons, now with new bankruptcy counsel, filed an amended plan, which, for the first time, stated that the Pattons may have a claim against the Town of Orford for the disposition of the vehicles. (Def.'s Ex. II.) This plan was confirmed on April 15, 2001 (Def.'s Ex. KK), and on June 15, 2004, the Pattons received their discharge, having successfully completed their plan. (Def.'s Ex.

NN.) The Court allowed them to keep the case open until September 7, 2004, at which time, they filed the instant adversary proceeding against the Town. (Def.'s Ex. PP.)

## DISCUSSION

Based on the above facts, the Plaintiffs brought this action for a violation of the automatic stay and for damages for sale of the vehicles in a manner that was not commercially reasonable. The Defendant moves for summary judgment on the issue of stay violation based on § 362(b)(4) and laches. On the issue of the reasonableness of the sale, the Defendant argues that the Plaintiffs are barred by the doctrine of collateral estoppel or issue preclusion.

■ In their briefs, both parties cite the First Circuit case of *Cournoyer v. Town of Lincoln,* 790 F.2d 971 (1st Cir.1986). It is clear under *Cournoyer* that an action to enforce a zoning ordinance, as an exercise of a government unit's police and regulatory power, is excepted from the automatic stay pursuant to § 362(b)(4). Indeed in the instant case, the Plaintiffs concede that the expenses to remove the vehicles, being a cost of removal and sale, namely, $1,020, is protected by the exception from the automatic stay.

The question then comes down to whether the legal fees associated with the actions by the Town to enforce the statute concerning junkyards is a cost of removal and sale. This Court finds that they are and, thus, like the expenses of actual removal, are protected by § 362(b)(4). The Court has reviewed the statement of legal fees attached to the Defendant's accounting filed in the superior court. Except for $1,250 in fees and $28.26 associated with

---

**2.** This response was submitted at the hearing on the motion for summary judgment, without objection.

the Plaintiffs' application for a DOT permit, the fees and expenses are applicable to the actions taken to enforce the statute and abate the violation. The Court also finds that the fact that some amount was for other than enforcement is immaterial since the Town only received $6,385 to be applied to total fees and expenses of $11,308.83. As the court in *Cournoyer* said,

> The Town is not seeking money from Cournoyer to clean up the site; it seeks to do what Cournoyer has adamantly refused to do, remove the used truck parts from the land. And, as the district court pointed out, Cournoyer's estate will receive the proceeds of the sale of the inventory, less costs of removal and sale. Both the debtor and the creditors will be protected insofar as possible under the circumstances.

*Cournoyer v. Town of Lincoln,* 790 F.2d at 976. While the Court has found no cases directly on point, the Court believes that the ability to recover legal fees without violating the automatic stay pursuant to § 362(b)(4) is analogous to the many cases finding that fees arising out of actions to enforce alimony or support obligations under § 523 of the Bankruptcy Code are routinely found to be in the nature of alimony and support and thus excepted from discharge. *See, e.g., Falk & Siemer, LLP v. Maddigan (In re Maddigan),* 312 F.3d 589 (2d. Cir.2002); *Gunther v. Glabb (In re Glabb),* 261 B.R. 170 (Bankr. W.D.Pa.2001); *D'Antuono v. Sullivan (In re D'Antuono),* 37 B.R. 595 (Bankr. D.Mass.1984).

The Court, having found that there is no violation of the § 362, will not address the issue of laches.

Next, the Court will discuss the Defendant's argument that the doctrine of collateral estoppel bars the Plaintiffs from raising the issue of whether the sale of vehicles was commercially reasonable. The Plaintiffs oppose, stating that this issue has not been fully litigated and, thus, the Plaintiffs are not barred by the doctrine of collateral estoppel.

In order for the collateral estoppel to apply, four requirements must be met:

1. The party against whom collateral estoppel is asserted must have been a party to or in privity with a party to the prior adjudication.
2. The issue decided in the prior adjudication must be identical to the one presented in the instant action.
3. The issue in the first action must have been completely, fully and fairly litigated.
4. The first suit must have resulted in a final judgment on the merits.

*See Montana v. United States,* 440 U.S. 147, 153–54, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). This Court believes that in the instant action, all four requirements have been met. First, there is no question that the parties are the same as in the state court proceeding. Second, the issue of the commercially reasonableness of the sale of the vehicles is the same issue as presented in the Plaintiffs' objection to the Defendant's accounting, which was also briefed by counsel for the Defendant. The Plaintiffs argue that since the May 5, 2000, superior court order did not specifically refer to the issues, the issue was not fully litigated. This Court disagrees. The Plaintiffs' arguments were made in the superior court, disputed by the Defendant herein in its papers to that court, after which the court found in its order, "[t]he Court accepts the Petitioner's accounting as filed and notes that Respondent's objection thereto contained numerous facts and conclusions neither supported by the record nor established by affidavit. The Court further acknowledges the receipt of four checks in the total amount of

$7,405.00." (Def.'s Ex. EE.) This meets the requirements of being fully and fairly litigated. Finally, the Plaintiffs herein appealed to the New Hampshire Supreme Court, which refused to take the appeal, making the May 5, 2000, order a final judgment on the merits. Based on the above, collateral estoppel applies and the Plaintiffs are barred from relitigating the issue of a commercial reasonableness of the sale of the vehicles.

The Plaintiffs have further raised in their complaint that, by obtaining the funds from the proceeds, the Defendant received a preference. This issue was not argued at oral argument, and the Court would find that the payments were not for an antecedent debt and, thus, the issue of preference is not applicable.

### Conclusion

This opinion constitutes the Court's findings and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate final judgment consistent with this opinion.