# United States Court of Appeals
## For the First Circuit

No. 09-9022

IN RE: LUIS G. VÁZQUEZ LABOY; CARMEN D. GARCÍA CALDERÓN,

Debtors.

LUIS G. VÁZQUEZ LABOY; CARMEN D. GARCÍA CALDERÓN,

Appellants,

v.

DORAL MORTGAGE CORPORATION; DORAL FINANCIAL CORPORATION;
EDGARDO CANALES IDRACH d/b/a CANALES LAW OFFICES;
ÁNGEL R. ROLÁN PRADO,

Appellees.

APPEAL FROM THE BANKRUPTCY APPELLATE PANEL
FOR THE FIRST CIRCUIT

Before

Torruella, Lipez, and Thompson, <u>Circuit Judges</u>.

<u>Juan M. Suárez Cobo</u>, with whom <u>Legal Partners, P.S.C.</u> was on brief, for appellants.
<u>Giselle López Soler</u>, with whom <u>Néstor M. Méndez Gómez</u> and <u>Pietrantoni Méndez & Álvarez LLP</u> were on brief, for appellees Doral Mortgage Corporation and Doral Financial Corporation.
<u>Giancarlo Font García</u>, with whom <u>Rivera-Carrasquillo, Martínez & Font</u> was on brief, for appellees Edgardo Canales Idrach d/b/a Canales Law Offices and Ángel R. Rolán Prado.

May 27, 2011

**THOMPSON**, **Circuit Judge**.    Debtors Luis Vázquez Laboy and Carmen García Calderón claim they were unconstitutionally deprived of a hearing on damages due to them as a result of the Appellees' willful violation of the automatic stay in their bankruptcy case. Appellees Doral Mortgage Corporation – who set in motion the stay violation – and its former attorney-notaries at Canales Law Offices, Edgardo Canales Idrach and Ángel Rolán Prado (collectively, Canales) – who actually carried out the acts that violated the stay – have mounted a broad counter-attack, fighting everything from our jurisdiction to the willfulness of the violation.    All this avails them nothing, however.    Avoiding the constitutional issue, we nevertheless find that the Debtors are entitled to present evidence, and we remand so they can do so.

**Shenanigans at the Registry**

This case's decade-plus of court proceedings all stem from the Debtors' purchase of a property in Corozal, Puerto Rico on December 17, 1996.[1]   Not long after the purchase – on December 30, 1996 – the Debtors presented their conveyance deed to the Registry of Property.    Under Puerto Rico law, the Registry has sixty days either to record a deed that has been presented or to notify the presenters of any defects.    See 30 L.P.R.A. § 2255.    If a deed's presenters do not correct any defect within sixty days of

---

[1] The Debtors purchased the property from Manuel Angel Vázquez and Margarita Ortiz Bonilla; the notary who effected the transaction was Luis F. Maldonado Rivera.

notification, then the presentation expires and the Registry will reject the deed.  See id.

On February 15, 1997 – before the initial sixty-day period was up, and with the conveyance deed still unrecorded – the Debtors borrowed $25,000 from Doral, secured by a mortgage on the property. Canales, acting as a notary retained by Doral, promptly presented the mortgage deed to the Registry.[2]

This is where things went awry.  First, the Registry informed the Debtors that their conveyance deed was defective.  So on May 5, 1997, the Debtors withdrew the deed, as was their right under 30 L.P.R.A. § 2254.  But the mortgage deed remained in limbo; its presentation expired and it was never recorded.  The Registry ought to have informed Doral or Canales that the mortgage deed was defective due to the withdrawal of the conveyance deed, see id. §§ 2255, 2272; Doral disputes that the Registry did so.  But there is no question that by July 29, 1999, Doral had learned that the conveyance and mortgage deeds remained unrecorded.  Nevertheless, it sat on its hands.  And in the meantime, on January 31, 2000, the Debtors filed for Chapter 13 bankruptcy.  Doral learned of the bankruptcy petition in February and entered the case in early

---

[2] Under Puerto Rico law, a notary is an attorney specially authorized to execute and give legal effect to certain documents – including deeds – so the documents will reflect the agreement of the parties.  See 4 L.P.R.A. §§ 2002 (defining notary), 2031 (defining "public documents" as including deeds), 2032 (notaries responsible for conforming public documents to parties' agreement).

-3-

March.

Now Doral was in a fix. The bankruptcy petition had triggered an automatic stay, forbidding any action to perfect a lien against estate property. See 11 U.S.C. § 362(a)(4). But this restriction hurt Doral: Doral's interest in the Debtors' property remained unperfected, and its position in the bankruptcy proceedings suffered as a result.[3] If the mortgage had been recorded then Doral's claim against the bankruptcy estate would have been secured by a lien on the property; the unrecorded mortgage, though, left Doral's claim effectively unsecured. So, heedless of the stay, on December 1, 2000, Canales – again acting as a notary retained by Doral – presented the mortgage deed to the Registry anew, this time with a corrected conveyance deed.[4] See 30 L.P.R.A. § 2275 (allowing for a new presentation after the correction of defects). The Debtors, however, did not take this lying down.

**Adversary Action**

On August 22, 2001, the Debtors filed an adversary action

---

[3] See, e.g., In re SPM Mfg. Corp., 984 F.2d 1305, 1312 (1st Cir. 1993) ("If a lien is perfected and not otherwise invalidated by law, it must be satisfied out of the assets it encumbers before any proceeds of the assets are available to unsecured claimants, including those having priority.").

[4] Apparently the conveyance deed had already been corrected and re-presented by notary Julio E. Córa Lopez; Canales obtained a copy of the corrected deed from the Registry and filed this copy with the mortgage deed. The correction and re-filing of the conveyance deed rendered the mortgage deed valid, and the copy of the corrected conveyance deed evidenced this remediation to the Registry.

-4-

against Doral in bankruptcy court, claiming that Doral's presentation of the mortgage deed willfully violated the automatic stay and seeking various relief, including damages, costs, and fees.[5] Doral moved to dismiss the complaint. For their part, the Debtors filed a motion for partial summary judgment on liability. There followed a flurry of filings, including an amended complaint that brought Canales into the case. Canales responded with its own summary judgment motion. Finally, on August 29, 2003 the court dismissed the action, holding that Doral's post-petition attempt to perfect its mortgage fell under an exception to the automatic stay. See 11 U.S.C. § 362(b)(3).[6]

---

[5] The filing of the corrected conveyance deed did not constitute an act against the bankruptcy estate and therefore has never been directly at issue.

[6] Specifically, § 362(b)(3) provides that a bankruptcy petition does not act as a stay against:

> any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under [11 U.S.C. § 546(b)] or to the extent that such act is accomplished within the period provided under [11 U.S.C. § 547(e)(2)(A)].

Section 546(b) provides that a trustee's rights and powers are subject to generally applicable laws (A) allowing the perfection of a property interest "to be effective against an entity that acquires rights in such property before the date of perfection" or (B) "provid[ing] for the maintenance or continuation of perfection . . . to be effective against an entity that acquires rights in such property before the date on which action is taken to effect such maintenance or continuation." Section 547(e)(2)(A) defines a time period: "at the time [a] transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 30 days after, such time, except as provided in subsection

The Debtors moved for reconsideration, and after kicking the issue about for three years the court obliged by reversing itself, granting the Debtors' motion for partial summary judgment, and effectively denying Doral and Canales's dispositive motions. The court recognized that Doral had been aware well in advance of the bankruptcy petition that its mortgage was unrecorded, and concluded that the attempt to perfect the mortgage had constituted a violation of the automatic stay. As a result, the court ordered Doral to withdraw the mortgage deed and turn it over to the Debtors for cancellation. An untimely appeal by Canales to the Bankruptcy Appellate Panel (also "BAP" or "Panel") was swiftly dismissed for want of jurisdiction. See Fed. R. Bankr. P. 8002(a) (establishing time to file); In re Abdallah, 778 F.2d 75, 77 (1st Cir. 1985) (Rule 8002 time limit is jurisdictional).

Buoyed by their string of successes, the Debtors petitioned the court for damages, which then-section 362(h) authorized following a willful violation of the automatic stay.[7] The former 11 U.S.C. § 362(h) read: "An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate

_____

(c)(3)(B)." Subsection (c)(3)(B) refers to perfection "on or before 30 days after the debtor receives possession of . . . property." As the body of this opinion notes, the bankruptcy court originally found that the exception applies here but then reversed itself. Neither conclusion is now at issue.

[7] Damages now fall under 11 U.S.C. § 362(k).

circumstances, may recover punitive damages." The Debtors explicitly sought both a preliminary conference and a full hearing on damages. The court acceded to the request for a conference, which occurred on June 22, 2007,[8] but the hearing on damages never happened: on October 8, 2008, the court denied both the hearing and damages, and attorneys' fees to boot, finding that the cancellation of the mortgage was remedy enough. On December 17, 2008, the court entered a final judgment denying damages. The Debtors appealed to the Bankruptcy Appellate Panel, which summarily affirmed due to a missing transcript; now they seek our review.

**Jurisdiction**

Before reaching the parties' substantive arguments, we must determine whether we have jurisdiction to consider the matter at all. Doral and Canales say we do not, for two reasons. First, they say, the bankruptcy court's order on the motion for reconsideration constituted a final judgment, so the Debtors' request for damages and subsequent appeal months later were untimely. And second, they say, even if there were some question as to whether the court's order was a final judgment, the law of the case requires us to hold that it was because the Bankruptcy

---

[8] At the conference, the parties outlined their arguments on the effect and validity of the court's self-reversal, and the court set a briefing schedule so the parties could lay out their arguments in more detail. The court did not indicate that it would be ruling on the Debtors' damages request; instead, the discussion suggested that the court would sort out the procedural morass that followed its self-reversal.

Appellate Panel so held and no one challenged the Panel's determination. Both of these arguments fail. We plainly "have jurisdiction of [timely] appeals from all final decisions, judgments, orders, and decrees" of intermediate bankruptcy tribunals. 28 U.S.C. § 158(d)(1). Here, the BAP issued a final decision and judgment in the form of a summary affirmance. Therefore, we have jurisdiction.

We will, however, address Doral and Canales's jurisdictional arguments as applied to the bankruptcy court, because if the bankruptcy court had no authority to entertain the Debtors' request for damages then no hearing on damages was necessary and our review can end there.

The first jurisdictional argument, again, goes to timeliness. Specifically, Doral and Canales say that the Debtors' request for damages was functionally equivalent to a motion to alter or amend a judgment under Fed. R. Civ. P. 59(e) because it sought additional relief after the court had already granted summary judgment. As a basis for this argument Doral and Canales say the order granting summary judgment was a "final judgment"; if it was then the motion may be properly characterized as one under Rule 59. And if this is the case then the motion had to be filed within ten days of the original judgment. See Fed. R. Civ. P. 59(e) (amended in 2009 to extend filing period to twenty-eight days). Rule 59's time limit is jurisdictional. Barrett v. United States, 965 F.2d 1184, 1187

-8-

(1st Cir. 1992).  So, Doral and Canales conclude, because the damages request was not filed within ten days of the summary judgment grant, the bankruptcy court had no jurisdiction to entertain it.  But if, as the Debtors argue, the motion was something other than one to set aside judgment, then the Rule 59 ten-day window would not apply.

The term "final judgment" is no misnomer – the Supreme Court has held consistently for generations that it applies only to a determination that leaves nothing more for the court to do than to execute judgment.  See Riley v. Kennedy, 128 S. Ct. 1970, 1981 (2008) ("A final judgment is 'one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'") (quoting Catlin v. United States, 324 U.S. 229, 233 (1945)).  It follows that if the issue of damages was still open when the court resolved the Debtors' motion for partial summary judgment then the court's determination was not final.  See Garzaro v. Univ. of P.R., 575 F.2d 335, 337 (1st Cir. 1978) (holding that an order that "leaves open the monetary liability of defendants, is not a 'final' order" and collecting sources).  Indeed, the Debtors requested damages in their complaint and the court failed to act on this request – the issue remained unresolved when the court granted summary judgment.  The bankruptcy court referred to its conclusion only as an order.  No judgment entered after the court's order. And later on, the court itself explicitly held that it had not

issued a final judgment. The only thing that might lead us to accept Doral and Canales's contention that the order was a final judgment is a single line in the order: "judgment must enter in favor of the debtors." But this line is not particularly convincing – judgment did not actually enter at all. Given all this, it is abundantly clear that the court did not issue a final judgment before the Debtors filed their motion for damages. There was no motion to alter or amend judgment because there was no final judgment to alter or amend.

Doral and Canales next argue that the law of the case effectively precluded the bankruptcy court's exercise of jurisdiction over the motion for damages. This is so, Doral and Canales say, because the BAP dismissed Canales's appeal of the order granting summary judgment on the ground that it lacked jurisdiction due to Canales's untimely filing. According to Doral and Canales, the BAP's dismissal constituted an implicit holding that the order was a final judgment. However, that is not the case.

"The law of the case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" Remexcel Managerial Consultants, Inc. v. Arlequin, 583 F.3d 45, 53 (1st Cir. 2009) (quoting Arizona v. California, 460 U.S. 605, 618 (1983)). We need not expound on this doctrine in great detail, as it plainly

does not apply here. Not only was the bankruptcy court's order granting summary judgment not a final judgment, but the BAP did not hold that it was one either. Intermediate bankruptcy tribunals have jurisdiction over appeals not only from "final judgments, orders, and decrees," but also from "interlocutory orders and decrees." 28 U.S.C. § 158. Any appeal to an intermediate bankruptcy tribunal – whether from a final judgment or an interlocutory order – is subject to the time limit imposed by Rule 8002(a) of the Federal Rules of Bankruptcy Procedure.[9] Thus, the BAP's generic determination of untimeliness says nothing and implies nothing about whether the unsuccessful appeal was from a final or interlocutory order. For this reason, the law of the case has no place here.

Doral and Canales propose the last-ditch policy argument that it would be unfair to allow the Debtors an opportunity to appeal when Canales was barred from the same opportunity; this argument is perhaps their least compelling. Let us put it this way: If Doral and Canales were correct that the order granting summary judgment constituted a final judgment, then Canales dug its own appeal's grave by filing fifty-eight days after the court's ruling – not just untimely, but very untimely. But they are not correct on the final judgment issue, which means that when final judgment actually

_____

[9] Rule 8002(a) imposed a ten-day time limit for appeals until 2009, when the limit was increased to fourteen days.

did enter, there was no reason they could not have cross-appealed, fighting summary judgment before the BAP and then before us.  See, e.g., In re Bos. Reg'l Med. Ctr., Inc., 291 F.3d 111, 116 n.2 (1st Cir. 2002) (noting that appellees aggrieved by a lower court judgment may cross-appeal); Fed. R. Bankr. P. 8002(a) (establishing time limit for cross-appeals).  They have not done so.  Doral and Canales have failed to avail themselves of procedures that were readily available to them; this failure decidedly does not imply that they were unfairly deprived of an opportunity to appeal the order granting summary judgment.

In the end, then, the bankruptcy court had jurisdiction over the Debtors' damages motion, and we certainly have jurisdiction over the Debtors' appeal of its denial.  We turn now to the merits of the case.

**Standard of Review**

Before a bankruptcy case reaches us, appellants have two options for intermediate review: they may be heard by a district court or a bankruptcy appellate panel.  In re Hill, 562 F.3d 29, 32 (1st Cir. 2009); see also 28 U.S.C. § 158.  Whichever option the appellants choose, in conducting our own review we "cede no special deference to the intermediate decision," focusing instead on the bankruptcy court's decision.  Hill, 562 F.3d at 32.  Our review of the bankruptcy court's decision is de novo, though we will only upset the court's factual determinations in the case of clear

error.  Id.

**Willful Violation**

An important premise of the Debtors' appeal is that the bankruptcy court found Doral and Canales to have willfully violated the automatic stay.  Without a willful violation, the damages provision of 11 U.S.C. § 362 by its terms would become irrelevant. Doral and Canales claim that the bankruptcy court never found a willful violation.  They focus on the absence of the word "willful" anywhere in the court's analyses.  They further argue that there was no willful violation as a matter of fact, precluding partial summary judgment in the Debtors' favor and therefore precluding damages.  We disagree: as the bankruptcy court effectively held, there was a willful violation as a matter of undisputed fact.[10]

A violation is "willful" if a "creditor's conduct was intentional (as distinguished from inadvertent), and committed with knowledge of the pendency of the bankruptcy case." In re McMullen, 386 F.3d 320, 330 (1st Cir. 2004).  Doral and Canales cannot and do not contest that Canales, at Doral's request, intentionally presented the mortgage deed to the Registry after the Debtors had

---

[10] We also pause to note that, because neither Doral nor Canales cross-appealed, there is no direct challenge before us as to the bankruptcy court's summary judgment grant, including its determination that a willful violation occurred.  The willful-violation question remains alive only to the extent that it affects the Debtors' right to damages.  This limitation affects not only our analysis but also the effect of our decision: specifically, the mortgage remains cancelled because no one challenged that result.

filed their bankruptcy case. Nor is there any dispute that Doral had knowledge of the case while it retained Canales, given that Doral filed a notice of appearance in the underlying bankruptcy case months before Canales filed the mortgage deed with the Registry. Doral and Canales each attempt to cast themselves as the guiltless party in the filing of the deed: Doral claims that Canales filed the deed on the basis of Doral's pre-petition urgings, and Canales claims that it did so without notice from Doral as to the pending bankruptcy action. In other words, Doral took no actions once it had knowledge, and Canales did take actions but had no knowledge. Diffusion of responsibility, however, gets them nowhere. See McMullen, 386 F.3d at 331 (cataloguing cases of joint willful violations); see also In re Timbs, 178 B.R. 989, 995 (Bkrtcy. E.D. Tenn. 1994) (cataloguing cases of joint willful violations by attorney and client). It seems to us that Doral ought to have informed Canales when it learned of the bankruptcy petition, and that Canales – given the notary's role of giving legal effect to "the will of the parties," 4 L.P.R.A. § 2002 (emphasis added) – ought to have done more than follow Doral's word alone.[11] Despite their protestations, Doral and Canales's acts are

_____

[11] Indeed, Canales's argument that it acted not in concert with Doral, but rather in its independent role as a notary – effectively a public officer – is neither carefully advanced nor well-taken. Doral told Canales it wished to foreclose against the Debtors and needed the mortgage deed to be registered properly. By all accounts, Canales asked no questions, did not contact the Debtors, and simply did Doral's bidding. On the plain-as-day record and the

not wholly separable from one another, and in the end there is no question that each is responsible for a willful violation as a matter of law.  See McMullen, 386 F.3d at 331.

Doral and Canales argue that the bankruptcy court's determination that "[t]he present case is more like an avoidance action . . . than a common violation of the automatic stay" forecloses a finding of willfulness as a matter of law.  They do not, however, explain how this avoidance analogy (which the court used only to support its decision not to award damages) might affect our willfulness analysis.  Instead, the analogy seems designed to fit the proverbial round peg (here, a willful violation of the stay) into a square hole (here, an avoidance action), casting this case as something it is not.  We have already spelled out what constitutes a willful violation, applied that standard here, and concluded that there was such a violation.  In contrast, an avoidance action allows a bankruptcy trustee to cancel an improper conveyance or recover for the estate the value of the improperly conveyed property.  See 11 U.S.C. §§ 544, 545, 547(b), 548(a), 549(a).  Here, the adversary action may indeed have been like an avoidance action in that cancelling an improper conveyance

---

sparse law cited by Canales, the firm acted not independently but rather on Doral's behalf.  Our own research bears out this conclusion. See, e.g., Chévere v. Cátala, 115 D.P.R. 432, 438, 15 P.R. Offic. Trans. 572 (P.R. 1984) (discussing the notary's inherent duty to "investigate the facts and data on which the efficacy or validity of [a] transaction rests") (emphasis and internal quotation marks omitted).

-15-

was a portion of the remedy, but it simply was not one.[12] Doral and Canales's analogy to avoidance actions cannot trump the language of the statute that actually applies here and the well-established case law construing that language; as a matter of plainly applicable law, Doral and Canales willfully violated the stay.

**Hearing on Damages**

Now we reach the meat of the appeal: the Debtors' contention that the court erred by denying them a hearing on damages.  The parties frame this as an issue implicating the Fifth Amendment's Due Process Clause.  But "courts should not decide constitutional issues when this can be avoided," see United States v. Vilches-Navarrete, 523 F.3d 1, 9 n.6 (1st Cir. 2008), and we can address the Debtors' concerns without recourse to the Fifth Amendment.

The opportunity for a plaintiff to present evidence on damages after winning partial summary judgment on liability is a right so fundamental in civil proceedings that it normally goes without saying.  See, e.g., Donahue v. United States, 634 F.3d 615, 622 (1st Cir. 2011) (district court "granted partial summary judgment . . . with respect to liability" and then "held a bench trial on the issue of damages"); In re Rivera Torres, 432 F.3d 20, 22 (1st

_____

[12] The fact of the separate statutory bases for willful violation actions (11 U.S.C. § 362) and avoidance actions (11 U.S.C. § 544) also renders inapposite the bankruptcy court's, and Doral and Canales's, reliance on In re Burns, 322 F.3d 421 (6th Cir. 2003).  Burns dealt only with avoidance actions and had nothing whatsoever to say about willful violations.

-16-

Cir. 2005) ("The bankruptcy court entered partial summary judgment in favor of the Debtors, subject to a later hearing on damages."); Vélez v. Awning Windows, Inc., 375 F.3d 35, 39 (1st Cir. 2004) (district court "granted the plaintiff's motion for partial summary judgment . . . resolv[ing] the issue of liability" and then "convened a damages hearing before a jury"); accord 10B Wright, Miller & Kane, Federal Practice & Procedure § 2736 (3d ed. 1998) (noting that "if the court establishes the existence of liability" via partial summary judgment, "the case then will proceed for a determination of the damage issue"). Such an opportunity is necessary here given the bankruptcy code's unequivocal mandate of actual damages following a willful violation of an automatic stay. As a reminder, the statute at issue provides: "An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees." 11 U.S.C. § 362(h) (prior to amendment). There can be no question that, as a general matter, the statute mandates actual damages. And it would be impossible for a court to set the amount of actual damages, costs, and attorneys' fees without taking evidence. Thus, the bankruptcy court frustrated both the statute's language and its mandated result by denying the Debtors a chance to prove damages. In order "to enforce [the statute] according to its terms," as both we and the bankruptcy court must do, remand is necessary. Caminetti v. United States, 242 U.S. 470, 485 (1917); see also

Mass. Museum of Contemporary Art Found., Inc. v. Buchel, 593 F.3d 38, 50 (1st Cir. 2010) (same).

Anticipating our decision's grounding in statutory language, Doral and Canales claim that the court's determination of a willful violation is not enough to trigger a damages inquiry: they say that in order to be statutorily entitled to damages a party must first prove injury, too. See 11 U.S.C. § 362(h) (prior to amendment, establishing right to recovery for "[a]n individual injured by any willful violation," emphasis added). The Debtors claim injury: they have expended court costs and attorneys' fees in order to vindicate the automatic stay, and the statute mandates that they may recover both as actual damages.[13] Moreover, in the context of a procedural argument founded on the absence of any opportunity to offer proof of damages, Doral and Canales's contention puts the trailer before the tractor. The Debtors would no doubt welcome an opportunity to prove injury, which is closely intertwined with damages; as it is, they have not had the opportunity to prove anything beyond the willful violation. The Debtors also point out that in each of a plethora of non-binding lower-court cases Doral and Canales cite on this point, the court made its final determination on damages only after reviewing evidence specific to

---

[13] The Debtors have made it plain enough that these are exactly the damages they seek: on appeal, they have waived their right to pursue actual damages other than costs and attorneys' fees except to the extent such damages might be necessary for an award of costs.

injury and damages.[14]   Thus, contrary to Doral and Canales's contentions, these cases support the Debtors' argument that the statute affords them an opportunity to present evidence.   The Debtors have a statutory right to prove damages after a willful violation of the automatic stay, and such a violation is precisely what occurred here.

The parties spend more energy on the question of whether the bankruptcy court already provided adequate opportunity for the Debtors to prove damages.   As a starting point, Doral says we cannot review the question at all and must summarily affirm because the Debtors have not produced a transcript of the bankruptcy court's conference that was nominally on damages.   This might be an issue, except for the undisputed fact that the court never held an evidentiary hearing but, instead, explicitly denied the Debtors' request for one.   Cf. Rodríguez v. Señor Frog's de la Isla, Inc., No. 09-2548, 2011 WL 1364934, at *7 (1st Cir. Apr. 12, 2011) (argument could not succeed absent transcript because there was not "enough raw material so that we [could] do our job").   Moreover, the transcript is readily available through the bankruptcy court

---

[14] In re Heghmann, 316 B.R. 395, 399 (1st Cir. B.A.P. 2004) (hearing involving testimony of two witnesses); In re Dayley, 349 B.R. 825, 829 (Bkrtcy. D. Idaho 2006) (outlining testimony on damages); In re Skeen, 248 B.R. 312, 319 (Bkrtcy. E.D. Tenn. 2000) (hearing involving testimony on, e.g., lost wages); In re Clayton, 235 B.R. 801, 805 (Bkrtcy. M.D.N.C. 1998) (full trial on all issues); In re Sucre, 226 B.R. 340, 344 (Bkrtcy. S.D.N.Y. 1998) (damages award based in part on review of pay stubs).

docket: it shows that the court discussed damages barely if at all and took no evidence. Instead, at the June 22, 2007 status conference, the parties laid out a skeletal version of their legal arguments, and the court ordered further briefing. Between the bankruptcy court's rejection of a damages hearing and the easily obtained transcript's showing that the status conference did not allow for the presentation of evidence, there is more than enough for us to conclude, as we do, that the court improperly denied the Debtors an opportunity to prove damages.

Wrapping up, we note that the bankruptcy court's decision itself shows why such an opportunity is necessary. The record reveals no clear foundation for the bankruptcy court's conclusion that damages were unwarranted. The court only suggested that the adversary proceeding was "like an avoidance action," but did not otherwise support its conclusion that cancellation of the mortgage was a sufficient remedy for the willful violation. And the court gave no explanation for disregarding the statute's language mandating the recovery of costs and attorneys' fees. The court's conclusion is rooted in neither record nor statute, and an analogy unsupported by any evidence is not enough to justify its decision to disregard the statute's mandatory language and deny damages.

**Conclusion**

For the reasons set forth above, we **reverse** the bankruptcy court's denial of a hearing on damages, **vacate** its rejection of

damages, and **<u>remand</u>** for the parties to present evidence on damages.

Costs are taxed in favor of the appellants.