# United States Court of Appeals
## For the First Circuit

No. 22-1761

IN RE: LUIS MANUEL RUIZ RUIZ,

Debtor,

MILK INDUSTRY REGULATORY OFFICE OF THE COMMONWEALTH OF PUERTO RICO,

Appellant,

v.

LUIS MANUEL RUIZ RUIZ,

Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Rikelman, Hamilton,* and Thompson,
Circuit Judges.

Edward W. Hill-Tollinche, for appellant.

Homel A. Mercado-Justiniano, for appellee.

_____

* Of the Seventh Circuit, sitting by designation.

November 21, 2024

**HAMILTON**, **Circuit Judge**.  In this appeal, we consider the "police power" exception to the Bankruptcy Code's automatic stay provision, 11 U.S.C. § 362.  The police power exception in § 362(b)(4) provides that the automatic stay does not apply to "the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power."

In this case, the Puerto Rico agency that regulates milk production and distribution revoked a bankruptcy debtor's dairy license and ordered him to sell his milk production quota rights. When the debtor failed to do so, the agency announced plans to auction those rights under the governing regulations.  The bankruptcy and district courts found that planning the auction violated the bankruptcy stay under § 362.  We find, however, that the agency's plan to auction the debtor's milk quota falls squarely within the police power exception in § 362(b)(4).  We reverse the judgments of the bankruptcy and district courts and direct judgment in favor of the agency.

## I.   Factual and Procedural Background

The appellant in this case is the Milk Industry Regulatory Office of Puerto Rico, known as "ORIL" using the

initials from its Spanish name, Oficina para la Reglamentación de la Industria Lechera. ORIL regulates the production and distribution of milk under Puerto Rico law. See 5 L.P.R.A. §§ 1092-1139. ORIL grants dairy farmers licenses to operate, determines the amount of milk produced in the market through the allocation of milk quotas to licensed farmers, and polices the standards and quality of milk throughout the supply chain from farmers to consumers. Only licensed dairy farmers may produce milk for public consumption. 5 L.P.R.A. § 1101(a) & (e).

ORIL allocates milk quotas to licensed farmers. The quotas specify the amount of milk that the ORIL administrator assigns to milk producers, to be produced every fourteen days, "in accordance with the market's needs." 5 L.P.R.A. § 1126(c). Milk quotas may be sold, leased, or used as collateral by licensed dairy farmers. 5 L.P.R.A. §§ 1135-37. ORIL maintains and manages a national registry of quota transactions to track these transactions. 5 L.P.R.A. § 1127. ORIL also has broad investigative and enforcement powers to ensure that raw milk meets quality standards set by state and federal regulations.

Appellee Luis Manuel Ruiz Ruiz has been a dairy farmer in Puerto Rico. He filed for Chapter 12 bankruptcy in 2015, and as best we can tell, that bankruptcy is still open. After Ruiz filed for bankruptcy, ORIL began investigating his milk production practices. ORIL found evidence of milk trafficking, where a dairy

farmer either sells raw milk he or she did not physically produce or lies about the amount of milk produced. One punishment for milk trafficking can be the revocation of a farmer's dairy license. On August 18, 2018, Ruiz received a notice of complaint from ORIL threatening to revoke his license for milk trafficking.

ORIL issued its final administrative decision revoking Ruiz's license on October 22, 2018. As part of that decision, ORIL also ordered Ruiz to dispose of his milk quota through a public sale within 60 days. After some initial proceedings in the bankruptcy court, ORIL agreed to reinstate Ruiz's dairy license conditionally while he appealed his license revocation. Ruiz's appeal ended without success on May 1, 2020 when the Puerto Rico Supreme Court issued its final decision denying reconsideration of Ruiz's challenge to his license revocation.

Even after that loss, Ruiz did not sell his milk quota within 60 days, as ordered as part of the license revocation. As authorized by applicable regulations, ORIL then began taking steps to sell the quota through a public auction. On December 3, 2020, ORIL issued a notice for the public auction of Ruiz's quota. The auction was scheduled to take place on December 22, 2020. Before the auction could take place, Ruiz filed a new adversary proceeding against ORIL in the bankruptcy court. This appeal arises from that adversary proceeding.

Ruiz alleged that ORIL and its administrator knowingly violated the automatic stay in 11 U.S.C. § 362 by taking steps to auction his milk quota without permission of the bankruptcy court. Ruiz requested (1) a declaratory judgment saying that defendants violated the automatic stay and that the ORIL administrator acted in bad faith; (2) actual and punitive damages for violation of the automatic stay; and (3) a temporary restraining order to stop the public auction of his milk quota.

The bankruptcy court enjoined ORIL from auctioning Ruiz's milk quota without first seeking permission from the bankruptcy court. ORIL has complied with the bankruptcy court's order. The bankruptcy court later addressed Ruiz's requests for declaratory and monetary relief. On cross-motions for summary judgment, the bankruptcy court issued a split decision. It granted summary judgment in favor of ORIL's administrator, who had been sued for damages in his individual capacity. The court denied summary judgment for ORIL itself and granted Ruiz's motion in part, finding that ORIL violated the bankruptcy stay by taking steps to auction the milk quota. The bankruptcy court said it would hold a hearing on potential damages, but to date no hearing has occurred.

ORIL appealed the grant of summary judgment for Ruiz to the United States District Court for the District of Puerto Rico. The district court agreed with the bankruptcy court that ORIL

violated the § 362 stay when it took steps to auction Ruiz's milk quota outside the bankruptcy proceedings, holding that the police power exception in § 362(b)(4) did not apply. Milk Industry Regulatory Office v. Ruiz-Ruiz, 629 F. Supp. 3d 11, 18 (D.P.R. 2022). ORIL has appealed.

## II. Appellate Jurisdiction

Before addressing the merits, we first address our appellate jurisdiction. That question is complicated a bit because the parties have shifted the jurisdictional bases they have relied upon between the appeal to the district court and the appeal to this court.

The bankruptcy court order granted Ruiz's motion for summary judgment in part, as to liability, but it did not decide on damages, leaving that question for further proceedings. In ordinary civil litigation, such a partial resolution of a claim would not amount to an appealable final judgment. E.g., Liberty Mut. Ins. Co. v. Wetzel, 424 U.S. 737, 742-44 (1976). In bankruptcy proceedings, as well, such partial adjudications are ordinarily not final judgments. See In re Vázquez Laboy, 647 F.3d 367, 372 (1st Cir. 2011) (concluding that bankruptcy court order granting summary judgment to debtors in adversary proceeding alleging violation of automatic stay by private creditor and its attorneys was not final judgment where issue of damages was left unresolved).

- 7 -

Accordingly, ORIL sought permission to pursue an interlocutory appeal to the district court under 28 U.S.C. § 158(a)(3) and Federal Rule of Bankruptcy Procedure 8004. ORIL told the district court that the court had "discretionary appellate jurisdiction to hear and decide this interlocutory appeal pursuant to [section] 158(a)(3)." Appellee Ruiz agreed with ORIL's jurisdictional statement before the district court.

Under § 158(a)(3), district courts have discretion to grant leave for an interlocutory appeal from a bankruptcy court decision and may exercise appellate jurisdiction over such appeals. The statutes and rules do not establish standards for a district court's exercise of this discretionary power. See In re American Colonial Broadcast Corp., 758 F.2d 794, 801 n.7 (1st Cir. 1985). Most courts applying § 158(a)(3) have sensibly borrowed the standard in 28 U.S.C. § 1292(b) for interlocutory appeals from district courts to the courts of appeals. See Rodriguez-Borges v. Lugo-Mender, 938 F. Supp. 2d 202, 212 (D.P.R. 2013) (applying § 1292(b) standard in denying interlocutory appeal); Monahan v. Massachusetts Dep't of Revenue, 215 B.R. 287, 289 (D. Mass. 1997) (same); In re Delta Petroleum (P.R.), Ltd., 193 B.R. 99, 106 n.15 (D.P.R. 1996) (applying § 1292(b) standard in alternative holding granting leave to appeal); In re Caribbean Tubular Corp., 44 B.R. 283, 284-85 (D.P.R. 1984) (applying § 1292(b) standard in denying interlocutory appeal); see also 10 Collier on Bankruptcy ¶ 8004.08

- 8 -

(16th ed. 2024) (explaining that "courts have generally adopted [the § 1292(b)] standard when considering whether to grant leave to appeal from an order or decree of the bankruptcy court").

ORIL argued that the bankruptcy court's partial grant of summary judgment to Ruiz regarding ORIL's liability for violating the bankruptcy stay was appropriate for interlocutory appeal because (1) it involved a controlling question of law (the scope of the police power exception to bankruptcy stays), (2) as to which there was substantial ground for differences of opinion, and (3) that an immediate appeal of the bankruptcy court's order would materially advance the ultimate termination of the litigation. See 28 U.S.C. § 1292(b); Plixer Int'l, Inc. v. Scrutinizer GmbH, 905 F.3d 1, 6 n.6 (1st Cir. 2018) (explaining standard for granting appeal under § 1292(b)). While the district court never expressly addressed these § 1292(b) arguments made by ORIL, the court clearly chose to exercise its jurisdiction pursuant to § 158(a)(3). See Ruiz-Ruiz, 629 F. Supp. 3d at 15. The better course is to make the findings explicit, but we are satisfied that the conditions for interlocutory appeal were met in the district court. As noted, the district court affirmed the interlocutory order of the bankruptcy judge. Id. at 18.

So far, so good. But a problem arose in the appeal from the district court to this circuit court. We have appellate jurisdiction over final decisions of the district courts.

28 U.S.C. § 1291. We also have appellate jurisdiction over a final decision by a district court acting as an appellate bankruptcy court under § 158(a). 28 U.S.C. § 158(d)(1); see also Connecticut National Bank v. Germain, 503 U.S. 249, 253 (1992) ("Because giving effect to both §§ 1291 and 158(d) would not render one or the other wholly superfluous, we do not have to read § 158(d) as precluding courts of appeals, by negative implication, from exercising jurisdiction under § 1291 over district courts sitting in bankruptcy."). The question here, however, is how to evaluate the appealability of a district court decision affirming an interlocutory order from a bankruptcy court.

Complicating the matter, the parties' initial jurisdictional statements to our court were not consistent with what happened in the district court. Both parties told us that the bankruptcy court decision was a final order and that we have jurisdiction over the appeal under § 158(d)(1), which requires a final decision, judgment, order, or decree under § 158(a) or (b). Since the district court's affirmance of the bankruptcy court's order returned the adversary proceeding to the bankruptcy court to decide on damages, we questioned whether we could exercise appellate jurisdiction under § 158(d)(1). As we have explained before, "a district court order in an adversary proceeding is not appealable as of right under § 158(d) unless it ends the entire adversary proceeding on the merits and leaves nothing for the court

to do but enter the judgment." In re Financial Oversight & Management Bd. for Puerto Rico, 52 F.4th 465, 483 (1st Cir. 2022) (quoting In re Casal, 998 F.2d 28, 31 (1st Cir. 1993)).

After oral argument, we ordered the parties either to show cause why we should not dismiss for lack of appellate jurisdiction or to seek certification for an interlocutory appeal to our court under § 158(d)(2). Ruiz responded by arguing we lack appellate jurisdiction. ORIL pointed us to the Tenth Circuit's decision in Eddleman v. United States Dep't of Labor, 923 F.2d 782 (10th Cir. 1991). In Eddleman, the Tenth Circuit held that it had jurisdiction in a similar dispute over the police power exception to the bankruptcy stay. Id. at 784. Eddleman persuades us that we have appellate jurisdiction for narrow reasons specific to the police power exception, distinguishing this case from the rule we applied in In re Vázquez Laboy, 647 F.3d at 372.[1]

To explain, after the Eddleman debtors had petitioned for bankruptcy protection, the federal Department of Labor filed an administrative action alleging that they had violated federal law by underpaying employees working on government contracts. The Department sought, among other forms of relief, to debar the

_____

[1] Eddleman was overruled on other grounds, as noted in Temex Energy, Inc. v. Underwood, Wilson, Berry, Stein & Johnson, 968 F.2d 1003, 1005 n.3 (10th Cir. 1992) (citing Connecticut Nat'l Bank v. Germain, 503 U.S. 249 (1992)).

debtors from contracting with the government for three years. The debtors responded by asking the bankruptcy court for an injunction shutting down the administrative action and for an award of damages. The Department relied on the police power exception in § 362(b)(4), but the bankruptcy court issued the injunction. The district court affirmed that injunction and remanded the case to the bankruptcy court for further proceedings on the issue of damages for violation of the automatic stay. 923 F.2d at 783.

The Tenth Circuit held that the practical effect of the bankruptcy and district courts' decisions was to deny the Department relief from the stay, which in that circuit would ordinarily be appealable as a final decision. Id. at 784-85. Turning to the issue we face here, the Tenth Circuit then held that the open issue of damages did not defeat finality. The court compared the situation to a district court's rejection of a defense of absolute or qualified immunity, which is appealable as a final decision to the extent that the decision turns on a question of law. Id. at 788-90 (citing Mitchell v. Forsyth, 472 U.S. 511, 530 (1985) (holding that an order denying a claim of qualified immunity falls under the collateral order exception to the finality rule established in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541 (1949))).

The Tenth Circuit took pains in Eddleman to distinguish similar cases involving actions by private creditors, and the court

- 12 -

emphasized its reliance on the important governmental interests protected by the police power exception.  Id. at 787-90.  Without belaboring the point, we agree with Eddleman and its reasoning.  The bankruptcy and district courts' denials of ORIL's motion for summary judgment based on the police power exception are final decisions appealable under the collateral order doctrine — at least to the extent the denials turned on issues of law, just as a similar denial of summary judgment based on absolute or qualified immunity is appealable in a case, for example, under 42 U.S.C. § 1983.  The special considerations underlying the police power exception distinguish this case from appeals like In re Vázquez Laboy, where private creditors were accused of violating the automatic stay and the police power exception was not available.  647 F.3d at 372.  The order to show cause is hereby discharged.  We have jurisdiction and proceed to the merits.

### III. Standard of Review

In bankruptcy appeals, we afford no particular deference to decisions of the first-tier appellate tribunal (whether the district court or the bankruptcy appellate panel), and we focus on the bankruptcy court's decision.  In re Shove, 83 F.4th 102, 108 (1st Cir. 2023).  We review de novo the grant or denial of summary judgment, considering the parties' cross-motions for summary judgment separately in the light most favorable to the respective non-moving party and drawing all reasonable inferences in that

- 13 -

party's favor.  In re Financial Oversight & Mgmt. Bd. for Puerto Rico, 948 F.3d 457, 466 (1st Cir. 2020); see In re Varrasso, 37 F.3d 760, 762-63 (1st Cir. 1994).

## IV.  The Police Power Exception

Section 362 of the Bankruptcy Code provides that the filing of a bankruptcy petition automatically stays "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title," 11 U.S.C. § 362(a)(1), and also stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," § 362(a)(3).  The automatic stay in § 362 is "one of the fundamental protections that the Bankruptcy Code affords to debtors."  In re Jamo, 283 F.3d 392, 398 (1st Cir. 2002).  It "ensures that the assets remain within the exclusive jurisdiction of the bankruptcy court pending their orderly and equitable distribution among the creditors, better enabling the debtor's 'fresh start.'" In re McMullen, 386 F.3d 320, 324 (1st Cir. 2004). At the same time, the automatic stay can interfere with competing policy goals, so Congress has adopted important limits and exceptions to the stay, including the police power exception.

## A. Property of the Estate

As a threshold question, the automatic stay under § 362(a)(3) applies only to "property of the estate," so we explain briefly why Ruiz's milk quota is property of his bankruptcy estate. Section 541(a) defines "property of the estate" broadly to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). State law ordinarily creates and defines the underlying property interests, but federal bankruptcy law determines whether those interests are "property of the estate." In re TelexFree, LLC, 941 F.3d 576, 584 (1st Cir. 2019).

Under Puerto Rico law, milk quotas can be sold, leased, or used as collateral. See Rosa Dairy Farm, Inc., 622 B.R. 806, 808 (B.A.P. 1st Cir. 2020) (first citing 5 L.P.R.A. § 1135 and then citing P.R. Reg. No. 8660, Art. 7). At the same time, milk quotas are highly regulated. Puerto Rico Dairy Farmers Ass'n v. Pagan, 748 F.3d 13, 15 (1st Cir. 2014). "ORIL licenses dairy farmers to produce milk according to assigned quotas, and designates the milk from each farm to a specific processing plant." United States v. Gonzalez-Alvarez, 277 F.3d 73, 75-76 (1st Cir. 2002). Only a farmer to whom ORIL has issued a dairy license may own milk quotas. See P.R. Reg. No. 8660, Art. 5 ("Quotas may be purchased and sold, but only by farmers with a current license issued by [ORIL]."), as translated in Appellant App'x at 146.

- 15 -

Although milk quotas are heavily regulated, they still qualify as property of the estate under § 541. We find guidance from our decision dealing with a similar form of heavily regulated property, In re Gull Air, Inc., 890 F.2d 1255 (1st Cir. 1989). In Gull Air, we held that the Federal Aviation Administration did not violate the § 362 automatic stay when it revoked and reallocated the debtor airline's takeoff and landing time slots at a major airport. 890 F.2d at 1262. Regulations required an air carrier to use its time slots 65 percent of the time over a two-month period. If an air carrier failed to comply with this provision, the FAA was required to reallocate them to other carriers. Debtor Gull Air failed to comply with this provision, so the FAA reallocated its slots. Id. at 1261.

We concluded first that the slots qualified as at least a limited form of property: "[B]y granting carriers the right to buy and sell slots with the intent of maximizing reliance on market forces and minimizing government involvement regarding slot distribution, the FAA grants to carriers a limited proprietary interest in slots." Id. at 1260. That "limited proprietary interest" was "encumbered by conditions that the FAA imposed in its regulations," namely the "use or lose" provision. Id.

Likewise, by permitting milk quotas to be sold, leased, or used as collateral, ORIL has granted licensees a proprietary interest in their milk quotas. The regulations governing milk

- 16 -

quotas limit, but do not eliminate, a licensee's proprietary interest. We assume that this proprietary interest amounts to a kind of intangible personal property. Therefore, the milk quota became property of the bankruptcy estate when Ruiz filed for bankruptcy in 2015.[2]

Once the revocation of Ruiz's dairy license became final in 2020, however, Ruiz was no longer legally qualified to own milk quota. See Reg. No. 8660, Art. 5. The same order that revoked his dairy license ordered him to dispose of his milk quota within 60 days and warned that if he did not, ORIL would conduct a public auction of the quota, as regulations also provide. Either way, the revocation of Ruiz's dairy license meant the transfer of his milk quota became inevitable.

Still, the milk quota qualified as property of Ruiz's bankruptcy estate even after the license revocation became final. It is the sale of the milk quota, not the revocation of the dairy license, that extinguishes a former licensee's interest in milk quota. In this respect, Gull Air is distinguishable in a subtle but critical way. In Gull Air, we concluded that the debtor's

---

[2] We note that, in Gull Air, we declined to decide "whether a carrier's proprietary interest in an arrival or departure slot constitutes 'property of the estate' within the meaning of the Bankruptcy Code." 890 F.2d at 1261 n.8 (emphasis added). For present purposes, we are convinced that milk quotas qualify as property of Ruiz's bankruptcy estate under § 541.

"interest in the time slots . . . terminated by force of regulation with no need for affirmative action by the FAA." 890 F.2d at 1261. After the debtor "failed to satisfy a necessary condition to its continued possession of the slots," the slots automatically reverted to the FAA for reallocation. Id.

Unlike the FAA with the takeoff and landing slots in Gull Air, ORIL could not wait passively for the operation of law to divest Ruiz of his milk quota. Although ORIL does not have any discretion to allow a dairy farmer whose license is revoked to continue holding milk quota, see P.R. Reg. No. 8660, Art. 7, it needed to take legal action to enforce the part of the license revocation decision compelling the sale of Ruiz's quota. Until the sale, the milk quota remained in Ruiz's possession, despite the fact that he was no longer legally qualified to own it or use it. Because Ruiz retains a proprietary interest in his milk quota until it is sold, we treat his unsold milk quota as property of the bankruptcy estate.

**B.    The Scope of the Police Power Exception**

The automatic stay under § 362 is broad, but the police power exception in § 362(b)(4) exempts from the automatic stay "the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in

an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power." 11 U.S.C. § 362(b)(4).

This exception ensures that government agencies can still enforce laws "affecting health, welfare, morals and safety" and that debtors are not automatically protected in bankruptcy court from such regulatory laws. In re Universal Life Church, Inc., 128 F.3d 1294, 1297 (9th Cir. 1997). "When a governmental unit decides to undertake an enforcement action and believes its action falls within the police power exception, it need not petition the bankruptcy court for permission to proceed in the ordinary course . . . ." Chao v. Hospital Staffing Servs., Inc., 270 F.3d 374, 385 (6th Cir. 2001). By doing so, however, "the agency runs the risk that a court will later find its action outside the exception's ambit" and thus in violation of the bankruptcy stay. Id. We first apply the statutory text to the facts of this case. We then apply two tests that courts have devised for applying the police power exception.

### 1. Statutory Text of the Police Power Exception

In approaching this question of statutory interpretation, we start with the statutory text. E.g., City of Providence v. Barr, 954 F.3d 23, 31 (1st Cir. 2020). ORIL's planned auction of Ruiz's milk quota after the revocation of his license fits comfortably within the statutory text of § 362(b)(4).

- 19 -

The revocation of Ruiz's dairy license was certainly a proceeding by ORIL, a governmental unit, to enforce its police or regulatory power over milk safety and marketing.  The police power exception applies by its terms to the <u>commencement</u> or <u>continuation</u> of such an action, but also extends to "the <u>enforcement</u> of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power."  11 U.S.C. § 362(b)(4) (emphasis added).

The planned auction was a step in the enforcement of the judgment revoking Ruiz's dairy license.  On its face, that judgment ordered the disposition of his milk quota.  In statutory terms, the revocation of Ruiz's milk license did not produce "a money judgment," the enforcement of which is carved out as an exception to the police power exception.  <u>See</u> 11 U.S.C. § 362(b)(4); <u>see also</u> <u>Cournoyer</u> v. <u>Town of Lincoln</u>, 790 F.2d 971, 974-76 (1st Cir. 1986) (police power exception applied to zoning enforcement action seeking removal of junk from property; action did not involve money judgment even if compliance would require debtor to incur some expenses); <u>Penn Terra Ltd.</u> v. <u>Dep't of Environmental Resources</u>, 733 F.2d 267 (3d Cir. 1984) (same for state agency action seeking injunction to restore the environment and prevent future harm to it).  The statutory text of the police power exception to the

- 20 -

automatic stay thus applies to ORIL's planned auction of Ruiz's milk quota.

### 2. The Public Policy and Pecuniary Purpose Tests

Our conclusion directly from the statutory text also fits comfortably with case law applying the police power exception. While the statutory language is our touchstone, we have recognized that, in applying the police power exception, "courts have devised two interrelated, fact-dominated inquiries — the so-called 'public policy' and 'pecuniary purpose' tests . . . ." In re McMullen, 386 F.3d at 325.

The Sixth Circuit has explained these tests:

> Under the pecuniary purpose test, reviewing courts focus on whether the governmental proceeding relates primarily to the protection of the government's pecuniary interest in the debtor's property, and not to matters of public safety. Those proceedings which relate primarily to matters of public safety are excepted from the stay. Under the public policy test, reviewing courts must distinguish between proceedings that adjudicate private rights and those that effectuate public policy. Those proceedings that effectuate a public policy are excepted from the stay.

Hospital Staffing Servs., 270 F.3d at 385-86 (quoting In re Commerce Oil Co., 847 F.2d 291, 295 (6th Cir. 1988)); see also In re Nortel Networks, Inc., 669 F.3d 128, 140 (3d Cir. 2011) ("If the purpose of the law is to promote public safety and welfare or to effectuate public policy, then the exception to the automatic stay applies. If, on the other hand, the purpose of the law is to

- 21 -

protect the government's pecuniary interest in the debtor's property or primarily to adjudicate private rights, then the exception is inapplicable."). The undisputed facts show here that the revocation of Ruiz's dairy license and resulting auction of his milk quota qualify for the police power exception under either test.[3]

First, under the public policy test, we have already noted the heavily regulated nature of the milk industry in Puerto Rico. Dairy licenses and milk quotas are the bailiwick of ORIL, which oversees dairy license qualifications, milk quality, the market for milk and milk quotas, and enforcement actions for breaches of its various regulations. ORIL has an important interest in ensuring that those who hold dairy licenses do not place unsafe milk in the market. The health and safety dimensions of the regulatory requirements are evident. ORIL also has an interest in ensuring that the milk being produced can meet the demands of the consumer market by preventing milk quota from

---

[3] Cases are divided as to whether a government enforcement action must satisfy one or both of these tests to qualify for the police power exception. Compare Lockyer v. Mirant Corp., 398 F.3d 1098, 1108 (9th Cir. 2005) (satisfying one test is sufficient), with Hospital Staffing Services, 270 F.3d at 388–89 (enforcement action must satisfy both to qualify for police power exception); see also In re Nortel Networks, 669 F.3d at 139 n.12 (noting issue but not deciding it because enforcement action did not qualify under either test). Because the agency's action here satisfies both tests, we need not decide whether it must satisfy both or just one.

sitting idly in the hands of someone legally barred from using it. The revocation of Ruiz's dairy license <u>and</u> the public auction of his milk quota serve to promote public policy rather than to adjudicate private rights.

Also, to be clear, the police powers protected under § 362(b)(4) are not limited to matters directly involving public health and safety. They extend more broadly to regulatory efforts to protect public <u>welfare</u>. <u>E.g.</u>, <u>In re McMullen</u>, 386 F.3d at 324–25 (police power exception applied to state agency proceeding to revoke license of real estate broker; police power exception "discourages debtors from submitting bankruptcy petitions either primarily or solely for the purpose of evading impending governmental efforts to invoke the governmental police powers to enjoin or deter ongoing debtor conduct which would seriously threaten the public safety and welfare (<u>e.g.</u>, environmental and/or consumer protection regulations)").

The application of the police power exception to the automatic stay is also clear under the pecuniary purpose test. ORIL has no pecuniary interest in Ruiz's dairy license or milk quota. The agency will not receive any proceeds of the auction of Ruiz's milk quota. In this case, the bankruptcy court concluded that ORIL would not profit from this sale. <u>See</u> <u>In re Ruiz Ruiz</u>, No. 15-04548, 2021 WL 6102147, at *5 (Bankr. D.P.R. Dec. 23, 2021). The agency represented, however, that if there had been a profit

from the auction after paying the lienholder and auction expenses, the surplus would have been given to the debtor.

### 3.    The Role of the Lienholder

There is no doubt that the ORIL proceeding to revoke Ruiz's dairy license was protected from the automatic stay by the police power exception.  Ruiz argues, however, and the bankruptcy and district courts were persuaded, that the further step of auctioning Ruiz's milk quota is not protected.  We have just explained that the planned auction also fits the exception because it is part of the enforcement of the license revocation order.

In opposing this conclusion, Ruiz highlights ORIL's efforts to protect the interests of the lender that holds a security interest in Ruiz's milk quota.  As Ruiz sees things, the planned auction was not protected by the police power exception because it amounted to an effort to protect the financial interests of a private entity.  We are not persuaded that such efforts to protect the interests of a lienholder have any effect on the application of the police power exception.

The bankruptcy court, district court, and Ruiz all quoted language from our opinion in In re Spookyworld, Inc., 346 F.3d 1 (1st Cir. 2003), to argue that if the government's enforcement action serves the pecuniary interest of a private party (such as the lienholder here), the police power exception does not apply.  They seize on the parenthetical "perhaps" comment in the

following passage: "the exception does not apply if the government takes legal action to advance its own 'pecuniary' interest (or perhaps the pecuniary interest of others)." Id. at 9. These arguments overread that opinion and the tentative comment.

The parenthetical "perhaps" comment was obvious obiter dictum. It cannot be stretched to require advance bankruptcy court permission for the planned auction of milk quota here. ORIL is required by law to force Ruiz to dispose of his milk quota, and ORIL is also required by law, in the course of doing so, to protect the interests of lienholders. That does not mean that ORIL was taking action against Ruiz for the pecuniary benefit of the lienholder.

Moreover, the cited support for the quoted statement in Spookyworld would not support the broader application sought by Ruiz here. We cited In re Universal Life Church, Inc., 128 F.3d 1294 (9th Cir. 1997), and Chao v. Hospital Staffing Services, Inc., 270 F.3d 374 (6th Cir. 2001). Neither opinion endorsed an atextual rule to the effect that any time a government action serves any private pecuniary interest to any degree, the police power exception cannot apply. Rather, both opinions teach more narrowly that a pecuniary interest of the government itself cannot be the primary purpose of the government's action. See Universal Life Church, 128 F.3d at 1299 ("[M]ost government actions which fall under this exemption have some pecuniary component, particularly

those associated with fraud detection. This does not abrogate their police power function. Only if the action is pursued solely to advance a pecuniary interest of the governmental unit will the automatic stay bar it." (emphasis added) (internal quotation marks omitted)); Hospital Staffing Servs., 270 F.3d at 389 ("[T]he Secretary's action would not result in a pecuniary advantage to the government, so her suit passes the pecuniary interest test . . . ." (emphasis added)).

In Hospital Staffing Services, the Sixth Circuit recognized that the government's suit would "result in a pecuniary advantage to certain private parties vis-a-vis other creditors' interests in the debtor's estate, a situation addressed by this court's public policy test." 270 F.3d at 389 (emphasis in original) (footnote omitted). But the court also explained that if a government action "furthers both public and private interests and the private interests do not significantly outweigh the public benefit from enforcement, courts should defer to the legislature's decision to vest enforcement authority in the executive and recognize such actions as within 'such governmental unit's police and regulatory power,' as that term is used in § 362(b)(4)." Id. at 390.[4]

---

[4] In Hospital Staffing Services, the majority found that the circumstances of that particular "hot goods" case under the Fair

Here, the undisputed facts show that the purpose of ORIL's action was to protect the public safety and welfare (a) by ensuring that those who adulterate the milk supply are no longer legally qualified to produce and sell milk and (b) by enforcing the milk quota system in Puerto Rico. Because ownership of milk quota depends on holding a dairy license, and because the license revocation judgment ordered Ruiz to dispose of his milk quota, the planned auction would, in terms of § 362(b)(4), be part of the "enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power." 11 U.S.C. § 362(b)(4).

From ORIL's perspective, the existence of a lien on Ruiz's milk quota was purely coincidental and does not affect the agency's regulatory interests or powers. The fact that Ruiz chose

Labor Standards Act did not satisfy the public policy test because barring use of the hospital records in question would not prevent unfair competition but would "promote a significant property interest — a property interest held by the affected employees." 270 F.3d at 392–93. Judge Moore dissented, citing several cases holding that similar FLSA enforcement actions were protected by the police power exception. Id. at 395–97. The Hospital Staffing Services majority acknowledged that, given the fact-specific nature of the public policy test, applying the test is a "difficult undertaking" and there will be close cases. Id. at 389. In this case, however, applying the public policy test is much easier because the effect of the auction on the holder of the lien on Ruiz's quota is only a coincidental side-effect of Ruiz's choice to use his milk quota as collateral.

to use his milk quota as collateral for a loan did not weaken ORIL's regulatory power to protect public health and welfare. The fact that an auction would let the lienholder enforce its lien against Ruiz's quota is an incidental side effect of the regulatory action, one that results only from Ruiz's choice of collateral. That situation does not change the nature of the proceeding or overshadow or outweigh ORIL's public interest in regulating the milk market. Cf. E.E.O.C. v. Rath Packing Co., 787 F.2d 318, 325 (8th Cir. 1986) (holding that EEOC sex-discrimination suit against debtor-employer fell within police power exception: "When the EEOC acts, albeit at the behest of and for the benefit of specific individuals, it acts also to vindicate the public interest in preventing employment discrimination." (internal quotation marks and alteration omitted; quoting General Tel. Co. of the Northwest, Inc. v. E.E.O.C., 446 U.S. 318, 326 (1980))).

## V.   Conclusion

While this appeal was pending, several successful and attempted sales of portions of Ruiz's milk quota have taken place through the bankruptcy proceeding. We register here no objection to the bankruptcy court's supervision of those sales. But ORIL's attempted public auction of Ruiz's milk quota was part of the enforcement of a judgment obtained in an action to enforce ORIL's police and regulatory power. The attempted auction therefore did

not violate the automatic stay under § 362.  ORIL is entitled to summary judgment in its favor in the adversary proceeding.

**REVERSED.**